**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DON BRIEGER, ROBERT BECKER,** | ) | |
| **ALAN BURSTIN, PAULA MITCHELL,** | ) | |
| **and HARRY SCHULTZ,** | ) | |
| **individually and on behalf** | ) | |
| **of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06 C 1882** |
| | ) | |
| **TELLABS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Don Brieger, Robert Becker, Alan Burstin, Paula Mitchell, and Harry Schultz

are current and former participants in the Tellabs Profit Sharing and Savings Plan (the Plan).

They filed this putative class action lawsuit for breach of fiduciary duty under the Employee

Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1109 & 1132.  Plaintiffs allege that

defendants, who are claimed to be fiduciaries of the Plan, breached their fiduciary obligations by

permitting investments in Tellabs securities when it was imprudent to do so and by

disseminating misleading information to Plan participants about the prudence of investing in

Tellabs securities.[1]  Plaintiffs seek to represent a class of individuals who participated in the Plan

---

[1] In a separate action, a putative class of purchasers of Tellabs stock brought suit alleging
that defendants defrauded them regarding the value of the stock.  The district court's dismissal
of the plaintiffs' complaint was reversed on appeal but was upheld by the Supreme Court.  *See
Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007).

between December 11, 2000 and July 1, 2003.

Plaintiffs have moved for class certification pursuant to Federal Rule of Civil Procedure 23. For the following reasons, the Court grants plaintiffs' motion.

## Facts

The Court presumes familiarity with the facts of the case, *see Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878 (N.D. Ill. 2007), and summarizes those facts that are relevant to the class certification motion.

Tellabs Operations, Inc. sponsors the Tellabs Profit Sharing and Savings Plan and the Tellabs Retirement Program (collectively, the "Plan") as part of the Tellabs Advantage Program. These plans are governed by ERISA. Tellabs sponsors these plans and has been a named Plan administrator from 1999 to the present. Plaintiffs allege various breaches of fiduciary duty by Tellabs and other individual defendants comprising four groups of Plan fiduciaries: the director defendants, the administrative committee defendants, the investment committee defendants, and the individual officer defendants (collectively, "defendants"). The investment committee and the administrative committee were named fiduciaries of the Plan. The Tellabs board of directors was responsible for selecting and monitoring the members of the investment and administrative committees. The director defendants were responsible for the management and administration of the Plan, the disposition of its assets and determination of the amount of discretionary contributions in addition to Tellabs's basic match contribution to the Plan. They were also responsible for selecting, monitoring, and removing members of the administrative committee and the investment committee.

The administrative committee was the Plan administrator and a named fiduciary of the

Plan.  Pursuant to the Plan, the administrative committee had "final and binding discretionary authority to control and manage the operation and administration of the Plan."  Second Amended Complaint (Complaint) ¶ 92.  The investment committee was a named fiduciary of the Plan and had full discretionary authority to manage and control Plan assets and establish and implement an investment policy consistent with Plan objectives.  Among other duties, it was responsible for monitoring the diversification of investments of the Trust Fund (which is composed of assets of the Tellabs Company Stock Investment Fund), evaluating the propriety of investments, ensuring compliance with ERISA regarding the acquisition or holding of Tellabs stock, and eliminating and adding investment funds to the Plan.  Tellabs is the Plan's sponsor and had overall responsibility for the Plan.

The Plan is a defined contribution individual account retirement plan open to all Tellabs employees who were participants in Tellabs's previous retirement plan prior to 1999 or are at least twenty-one years old, employed with Tellabs for at least nine months, and complete 1,000 hours of service.  Eligible employees of Tellabs and its subsidiaries may participate in the Plan by making pre-tax contributions to one or more of twelve different investment options, with varying levels of risk and potential return.  Throughout the class period, Tellabs made matching contributions to the Plan, matching up to three percent of a participant's eligible compensation for the year.  Under the Plan, participants can choose how to invest matching contributions among the Plan's investment options, including, but not limited to, the Tellabs Stock Fund.

As indicated earlier, plaintiffs' proposed class period runs from December 11, 2000 until July 1, 2003.  In their complaint, plaintiffs allege that defendants violated their fiduciary duties to the Plan, plaintiffs, and all participants of the Plan during the class period.  Plaintiffs seek

relief on behalf of the Plan for losses caused by defendants' alleged fiduciary misconduct in managing and administering the Plan pursuant to sections 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 & 1132(a)(2). Plaintiffs allege that defendants permitted the Plan to invest in Tellabs stock when they knew or should have known Tellabs stock was an imprudent investment for retirement savings due to material undisclosed information relating to, among other things: production delays, poor test performance, declining demand, purchase order falsification, and other problems relating to certain key product lines, and company-wide restructuring activities and inventory write-offs. The Plan held substantial interests in the common stock of Tellabs.

Plaintiffs either participated in, or were beneficiaries of, the Tellabs Plan. As a result of workforce reductions, Tellabs terminated plaintiffs' employment. Plaintiffs qualified for severance benefits under the Plan. Tellabs gave plaintiffs, as well as other employees subject to the workforce reduction, the option of maintaining their accounts with the Plan. Brieger, Becker, Burstin, and Schultz elected to take full distribution of their Plan accounts in a lump sum upon leaving Tellabs's employ. In the second amended complaint, plaintiffs added Paula Mitchell as a representative plaintiff. Mitchell is a former Tellabs employee who opted to maintain her account with the Plan rather than take a lump sum distribution upon leaving Tellabs's employ.

## Discussion

Federal Rule of Civil Procedure 23 authorizes a court to certify a class action if the party seeking class certification meets all of the requirements of Rule 23(a) and one of the requirements of Rule 23(b). *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). Under Rule 23(a)(1)-(4), plaintiffs bear the burden of proving that the proposed class is so numerous that joinder of all members is impracticable; there are common

questions of law or fact; the representatives' claims are typical of those of the class; and the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 663-64 (7th Cir. 2004).

Once plaintiffs have satisfied the requirements of Rule 23(a), they must meet one of the requirements listed in Rule 23(b). *See Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2001). In this case, plaintiffs contend that they meet the requirements of Rule 23(b)(1)(A) and (B). First, they claim that prosecution of multiple individual actions by class members would create the risk of inconsistent or different adjudications with respect to the individual members of the class. *See* Fed. R. Civ. P. 23(b)(1)(A). Further, because plaintiffs bring their claims on behalf of the Plan, they contend that resolution of their claims would be dispositive of the interests of other participants or impede their ability to protect their interests. *See* Fed. R. Civ. P. 23(b)(1)(B). Plaintiffs also contend that their proposed class meets the requirements of Rule 23(b)(2) because defendants have refused to act on grounds generally applicable to the class, and thus plaintiffs seek declaratory and injunctive relief on behalf of the Plan.

In deciding motions for class certification, the Court "should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

**1.      Rule 23(a) requirements**

**a.      Numerosity**

Rule 23(a)(1) requires that a class be so "numerous that joinder of all its members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants do not raise any argument with respect to

numerosity and have therefore forfeited any objection to plaintiffs' satisfaction of this requirement.  *See Volovsek v. Wisc. Dep't of Agr. Trade & Consumer Prot.*, 344 F.3d 680, 689 n.6 (7th Cir. 2003) (absence of legal argument forfeits consideration of claim).  Plaintiffs contend that thousands of Tellabs employees were participants and beneficiaries of the Plan.  Specifically, based on Tellabs's ERISA documents, plaintiffs argue that the putative class could comprise as many as 6,690 class members.  The Court finds that the proposed class meets the numerosity requirement of Rule 23(a)(1).

### b.    Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class.  The Seventh Circuit has held that "'[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2).'"  *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).  A common set of operative facts is usually present when defendants are claimed to have engaged in "standardized conduct toward the members of the proposed class."  *Id*.

Defendants do not challenge plaintiffs' satisfaction of Rule 23(a)(2)'s commonality requirement directly.  Rather, they address commonality as a requirement intertwined with typicality.  Though commonality and typicality are closely related, the tests are distinct.  *Retired Chicago Police Ass'n*, 7 F.3d at 596-97.  Plaintiffs contend that members of the proposed class have a common question at the heart of their case:  whether defendants violated their fiduciary obligations under ERISA sections 409 and 502(a)(2) by imprudently managing and investing Plan funds.  Though there is some factual variation among the class members, these variations will not defeat commonality under Rule 23(a)(2) so long as there is at least one question of law

or fact common to the class.  *See Rosario*, 963 F.2d at 1017.

The Court finds that defendants' actions and decisions pertaining to the Plan amount to a common course of conduct vis-à-vis the putative class.  Defendants managed and controlled the Plan assets and directed the Plan's investment options.  Plaintiffs claim that through this management and control, defendants continued to invest the Plan's assets in Tellabs stock when they knew or should have known that it was imprudent to do so.  Further, because plaintiffs' claims derive from defendants' actions (or inactions) with respect to the Plan, plaintiffs have demonstrated that their claims involve a common nucleus of operative fact.  *See Keele*, 149 F.3d at 594.  The Court holds that the putative class meets Rule 23(a)(2)'s commonality requirement.  *See Rosario*, 963 F.2d at 1017-18.

**c.      Typicality**

Under Rule 23(a)(3), the Court must determine whether the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3). A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'"  *Keele*, 149 F.3d at 595 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).  Courts have cautioned, however, that "[t]ypical does not mean identical, and the typicality requirement is liberally construed."  *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996) (citing *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992)).  In deciding whether a plaintiff has met the typicality requirement, courts focus on the conduct of the defendant and determine whether the putative class representative and the members of the putative class claim similar injuries due to the defendant's alleged

actions.  *See Rosario*, 963 F.2d at 1018.

The Court is persuaded that plaintiffs' claims are typical of those of the putative class, principally because they seek relief on behalf of the Plan under section 502(a)(2) of ERISA for alleged fiduciary violations as to the Plan.  Defendants argue that the putative class fails to meet the typicality requirement of Rule 23(a)(3) because of variances in each participant's investment decisions under the Plan;  ERISA-specific and statute of limitations defenses that they contend defeat typicality; certain claims that require individualized inquiries; and because individualized analysis is necessary to determine whether putative class members who signed releases and took lump-sum payouts understood the releases to bar the claims raised in this suit.  The Court addresses these contentions in turn.

### i.    Investment variance

Defendants argue that the claims of the class representatives are atypical of those of the putative class because each Plan participant's claim depends on individual investment decisions. They interpret *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2007), a case applying modern portfolio theory, to hold that "the investment mix of individual [Plan] participants necessarily requires differing assessments of whether a given security is 'imprudent' under ERISA."  Defs.' Mem. at 15.  From this interpretation, defendants argue they have an "atypicality defense" that requires that Court to deny plaintiffs' motion for class certification. Defendants argue that "every proposed class member stands in a unique position" as an investor, a situation that throws up "atypical questions of law and fact" as to the prudence of investment in Tellabs stock by each Plan participant and therefore precludes typicality.  *Id*. at 18.

Defendants' argument largely ignores that plaintiffs have brought this suit on behalf of

the Plan under ERISA section 502(a)(2). 29 U.S.C. § 1132(a)(2). Actions brought under this provision of the statue are derivative in nature—that is, they focus on the injury to the plan from the fiduciary's alleged breach, rather than on injury to the individual participants. *E.g., Leckey v. Stefano*, ___ F.3d ___, Nos. 06-2483, 06-3161, 06-3162, 2007 WL 2458540 (3d Cir. Aug. 31, 2007) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). Plaintiffs have focused their claims on the fiduciaries' decision to allow the Plan to invest in Tellabs stock during the class period despite their knowledge of Tellabs's business woes. It is this injury, rather than direct injury to their individual accounts, that the putative class members assert. Therefore, variance in individual Plan participants' investment patterns does not undermine typicality. *See DiFelice v. U.S. Airways, Inc.*, 234 F.R.D. 70, 78 (E.D. Va. 2006), *aff'd*, __ F.3d __, No. 06-1892, 2007 WL 2192896 (4th Cir. Aug. 1, 2007) ("given the representative nature of a suit filed pursuant to ERISA 502(a)(2)," representative's claim was "necessarily typical of" and "essentially identical to" those of other ERISA plan beneficiaries).

Defendants offer no serious argument on this point. Instead, they state flatly that "[o]n the facts of this case, there is also no Rule 23 basis to certify a class simply because plaintiffs sue on behalf of the plan." Defs.' Mem. at 19. Defendants do not specify which facts militate against certification. Because they focus their argument on the variance in individual participants' investment patterns, however, the Court presumes that this is the key fact to which defendants' memorandum refers. But again, this argument fails to recognize that the putative class's claim is made on the Plan's behalf under section 502(a)(2). By focusing on investment variance and ignoring the application of Rule 23 to this section 502(a)(2) action, defendants fail to address properly the typicality issue.

In this connection, defendants' reliance on modern portfolio theory and *Summers* is misplaced. Defendants appear to equate modern portfolio theory with "substantive ERISA prudence law."[2] Defs.' mem. at 18. Consideration of how an investment fits within a portfolio is typically one important measure of prudent conduct that satisfies the fiduciary duties imposed by ERISA. *Summers*, 453 F.3d at 406 (citing *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 732 (7th Cir. 2006)). Defendants also correctly note that the Department of Labor's regulations on ERISA prudence sound in modern portfolio theory. 29 C.F.R. § 2550.404a-1.

Modern portfolio theory and its upshot, diversification, do not exhaust the requirements of ERISA prudence, however. Several courts have emphasized that ERISA fiduciaries must assess prudence at the level of individual investment choices available to ERISA plan participants. The Fourth Circuit in *DiFelice* held that

> [s]tanding alone, [modern portfolio theory] cannot provide a defense to the claimed breach of the 'prudent man' duties . . . [T]he relevant 'portfolio' that must be prudent is *each* available Fund considered on its own, including the Company Fund, not the full menu of Plan funds.

*DiFelice*, 2007 WL 2192896, at *10. *See also Langbecker v. Elec. Data Sys.*, 476 F.3d 299, 308 n.18 (5th Cir. 2007) (citing *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 438-41 (3d Cir. 1996)). In this case, because participants in the Tellabs Plan could choose how they would invest in the Plan, defendants had a fiduciary duty to ensure that each investment choice available to

---

[2] Defendants' argument on this point conflates two distinct senses of prudence. Defendants' statement that the prudence of investing in Tellabs stock turns on atypical considerations such as individuals' tolerance for risk is correct in one sense. But the prudence (in the sense of wisdom or financial soundness) of an individual participant's choice to invest in the stock through the plan is a separate question from the prudence (in the sense of complying with fiduciary duties) of defendants' offering it as an investment choice. The claims here turn on the latter.

participants was a prudent one. *DiFelice*, 2007 WL 2192896, at *10 n.8.

Moreover, the Fourth Circuit in *DiFelice* distinguished *Laborers Nat'l Pension Fund v. N. Trust Qualitative Advisors, Inc.*, 173 F.3d 313 (5th Cir. 1999), a case defendants cite to argue that ERISA prudence should not depend narrowly on fiduciaries' selection of individual investments, by noting that in that case, "the fiduciary *himself* consciously coupled risky securities with safer ones to construct one ready-made portfolio for participants." *DiFelice*, 2007 WL 2192896, at *10 n.8 (emphasis in original). In contrast, in both *DiFelice* and here, plan participants could choose from an array of investment options that included a company-stock fund. Rather than a unitary, "ready-made" portfolio that reasonably combined a risky hedge with more conservative investments, Plan participants here and in *DiFelice* faced a choice of how to structure their portfolios from a menu selected by a fiduciary. The Court is persuaded by the Fourth Circuit's reasoning that "a fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds, which individuals may or may not elect to combine with a company stock fund, could theoretically, in combination, create a prudent portfolio." *DiFelice*, 2007 WL 2192896, at *9-10.

Finally, the Court notes that *Summers*, on which defendants rely heavily, is distinguishable from this case. *Summers* considers when a fiduciary should diversify the holdings of an employee stock ownership plan. It concerns a plan that by definition is non-diversified and therefore, in a financial sense, imprudent—although explicitly provided for by ERISA. *Summers*, 453 F.3d at 411. The case does suggest that the point at which ERISA prudence could require diversification—deviation from the ESOP's basic aim—depends on the presence of "excessive risk," which in turn depends on the make-up of each ESOP participant's

individual portfolio. *Id.* But the Seventh Circuit's opinion in *Summers* does not relate this point about "excessive risk" and individual portfolios to class certification. Indeed, Judge Der-Yeghiayan certified the class of participants in United Airlines' ESOP early in the litigation, and this issue was not before the Seventh Circuit in the opinion relied on by defendants.

The Court is not persuaded that *Summers* sets forth a standard that should control its decision about class certification in this case, given the disparity in plans (an ESOP in *Summers* and a participant-directed plan here) and in the alleged responsibilities of fiduciaries (diversification to ward off "excessive risk" versus ensuring that each option in a participant-directed plan is prudent), as well as *Summers*'s lack of bearing on class certification.

Thus, for purposes of plaintiffs' class certification motion, the participants' individual portfolio decisions do not defeat a finding of typicality under Rule 23(b)(3).

### ii. ERISA section 404(c)

Defendants contend that under ERISA section 404(c), 29 U.S.C. § 1104(c), the Court must undertake a factual analysis of whether plaintiffs and each absent class member exercised "control," as defined by section 404(c), over their participant directed investments. Such an analysis, defendants argue, would destroy typicality because of the fact-specific evaluation necessitated by section 404(c).

ERISA section 404(c) provides, in pertinent part,

(1)(A) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary [of Labor])-
(i) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and (ii) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control[.]

29 U.S.C. § 1104(c). Defendants contend that this provision immunizes them from any claimed fiduciary breaches because participants exercised control over their investment options.

Plaintiffs argue that section 404(c) is irrelevant to the current motion because their claim is that defendants should have precluded investments in Tellabs stock on a Plan-wide basis given what they knew about Tellabs's business problems. Thus, plaintiffs contend, the Court need not undertake individual determinations regarding participants' investment choices because the proper inquiry focuses on what the fiduciaries did at the Plan-wide level.

In *Lively v. Dynergy*, the court addressed whether section 404(c) would defeat a finding of typicality under Rule 23(a)(3):

> The Court likewise is unpersuaded that typicality is defeated by the possibility that Defendants will raise a defense under ERISA 404(c) . . . . [T]he Court fails to see why the defense would be unique to Plaintiffs' claims and would not instead apply to the claims of all of the members of the proposed class, given that it is clearly the Defendants' position in this case that they bear no responsibility for the Plan losses . . . .

*Lively v. Dynergy*, No. 05 CV 63, 2007 WL 685861, at *10 (S.D. Ill. Mar. 2, 2007). Similarly here, plaintiffs' claims focus on defendants' actions toward the Plan, and whether those actions were prudent. Like the court in *Lively*, the Court does not understand plaintiffs' claims on behalf of the Plan to be affected by individual investment patterns. *Id*. at *11.

To the extent that defendants argue, on the basis of *Langbecker*, that typicality is defeated because section 404(c) defenses may apply to the claims of plaintiffs, some putative class members, or both, they overstate the effect of the *Langbecker* court's reasoning. In that case, the Fifth Circuit faulted the lower court's reliance on an "overarching derivative suit construct" effectively to eliminate the section 404(c) defense in suits brought under section 502(a)(2). *Langbecker*, 476 F.3d at 305, 309-10. Although the Fifth Circuit suggested that the availability

of section 404(c) defenses in these suits should have some bearing on class certification, it was more concerned that elimination of the defense could lead to ultimate recovery "on behalf of" ERISA plans that would exceed the aggregate amount individual participants could recover. *Id*. at 311-12. *Langbecker* is vague as to how the possibility of section 404(c) defenses should influence courts' class certification analyses, saying only that the "harmonization" of the two provisions "bears on the susceptibility of [suits under section 502(a)(2)] to class action treatment, because § 404(c) individualizes the consequences of fiduciary duty violations." *Id*. at 312.

The Court does not find in *Langbecker* more specific guidance than this as to section 404(c)'s bearing on typicality. It does, however, note that the *Langbecker* court ultimately upheld the lower court's finding that the plaintiffs' claims were typical of those of the putative class. The Fifth Circuit determined that although plaintiffs continued to trade in the EDS stock they claimed was an imprudent plan investment even after EDS disclosed accounting irregularities, Rule 23(a)(3)'s typicality requirement was met because both plaintiffs alleged "they suffered harm as Participants who lost money on EDS stock investments through [the defendant fiduciaries'] imprudent Plan management." *Id*. at 314. Plaintiffs' profitable post-disclosure trading in EDS stock raised the prospects of intraclass conflicts and section 404(c) defenses at the merits phase, but it did not preclude typicality. *Id*.

Thus, neither *Langbecker* nor *Lively* regarded plaintiffs' or putative class members' individual investment histories and the possibility of section 404(c) defenses as barriers to typicality in suits brought under section 502(a)(2) of ERISA. The Court agrees. Based on plaintiffs' claims on behalf of the Plan that defendants imprudently managed the Plan's

investments, the Court is not persuaded that the question whether individual participants controlled their investments for section 404(c) purposes defeats typicality.

### iii. Nondisclosure and misrepresentation claims

Defendants contend that plaintiffs' claims of nondisclosure and misrepresentation of information require individual inquiries to see what participants knew about the Plan and the company's stock when, and whether they justifiably relied on certain of defendants' statements. Plaintiffs, however, contend that because plaintiffs' claims are on behalf of the Plan, there is no need to make individualized determinations of detrimental or justifiable reliance.

The Seventh Circuit has never expressly held that detrimental reliance is an element of an ERISA breach of fiduciary duty claim. It has stated that the elements of such a claim are: (1) defendants are plan fiduciaries; (2) defendants breached their fiduciary duty; and (3) the breach caused harm to the plaintiff. *See Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). Courts deciding similar questions regarding omissions and misrepresentations under ERISA section 502(a)(2) claims have concluded that if alleged misrepresentations were made to class members in general, on a plan-wide basis (rather than individually or personally), then typicality is present and class certification is appropriate. *See, e.g., Nauman v. Abbott Labs.*, No. 04 C 7199, 2007 WL 1052478, at *2-3 (N.D. Ill. Apr. 3, 2007) (certifying class after acknowledging that issues of individual reliance do not preclude class certification); *Rogers v. Baxter*, No. 04 C 6476, 2006 WL 794734, at *4 (N.D. Ill. Mar. 22, 2006) (citing *Riordan v. Smith Barney*, 113 F.R.D. 60, 65 (N.D. Ill. 1986)) (finding class certification appropriate where "alleged misrepresentations were made to class members in general and on a class-wide basis"); *Nelson v. IPALCO Enter., Inc.*, No. IPO2-47CHK, 2003 WL 23101792, at *5 (S.D. Ind. Sept. 30,

2003) (certifying misrepresentation claims based on information "distributed or made available on a class wide basis").

The information that defendants distributed to Plan participants, as defendants concede, was disseminated on a Plan-wide basis through "town hall" meetings, internal blast e-mail updates, and newsletters. Plaintiffs contend that their claims arise out of these statements and announcements. Defendants have provided nothing to indicate that individual, specialized communications were sent to some participants and not to others. The Court finds persuasive the distinction between Plan-wide and individualized communications in determining whether a plaintiff's claims are typical of those of the class as a whole. Because defendants do not dispute that they distributed information in a Plan-wide and broad manner, the Court finds that individual determinations as to plaintiffs' reliance on this information likely will be unnecessary. *See Smith v. Aon Corp.*, 238 F.R.D. 609, 616 (N.D. Ill. 2006). Thus, what plaintiffs knew, and when, regarding their claims of nondisclosure or misrepresentation, does not defeat typicality.

### iv. Releases

Defendants re-assert their previous argument from their motion for summary judgment that the releases signed by certain plaintiffs upon leaving Tellabs's employ bar their claims under ERISA. Defendants interpret the Court's February 13, 2007 order to require an evidentiary analysis to determine whether plaintiffs knowingly and voluntarily waived their claims when they signed the general releases. This inquiry, defendants argue, demonstrates that plaintiffs' claims are not appropriate for class treatment.

Defendants misread this aspect of the Court's order denying their motion for summary judgment. In that order, the Court held that there was no basis to determine that signatories

would understand the release term preserving claims to "vested benefits" to exclude "a claim that the signatory received a lower level of vested benefits as a result of defendants' fiduciary breaches." *See Brieger*, 473 F. Supp. 2d at 885-86. Thus, "vested benefits" reasonably could be read to include benefits Plan participants would have received but for defendants' allegedly imprudent selection of Tellabs common stock as an investment option under the Plan. By this logic, a given Plan participant's claim on behalf of the Plan does not depend on whether he chose to maintain his Plan accounts or signed the release and received a lump-sum payment: the former unquestionably may assert a claim on the Plan's behalf, while the latter's continuing interest in vested benefits lets him assert a claim that fiduciary breaches impaired the benefits he would otherwise have received through the Plan. Nor, for purposes of class certification, does it depend on a given signatory's knowledge, because the Court has already interpreted "vested benefits," claims to which are preserved under the releases' carve-out provision, in a way that permits claims on the Plan's behalf.

Thus, as matters currently stand, the Court finds that the releases do not preclude typicality. The Court will, however, consider the need to certify subclasses as the case develops if the evidence suggests a need to reconsider the effect of the releases.

### iv. Statute of limitations

Defendants have raised a statute of limitations defense, contending that in denying their motion to dismiss, the Court did not address this defense. The Court did not decide the statute of limitations issue at that time because it could not do so appropriately at that stage of the case. In the present context, defendants argue that the statute of limitations starts to run on a particular plaintiff's claim when he gained actual knowledge of the facts giving rise to a fiduciary duty

claim.  They contend that the need for individualized inquiries into when participants gained such knowledge precludes class treatment.  Plaintiffs argue that because their claims are for relief on behalf of the Plan, such individualized determinations are unnecessary.

When an individual plaintiff brings an action under ERISA on his own, he must bring suit within three years of his knowledge of the facts giving rise to a fiduciary breach claim.  *See Rush v. Martin Petersen Co., Inc.*, 83 F.3d 894, 896 (7th Cir. 1996) (ERISA statute of limitations applies to individual plaintiff suing plan).  It is not settled, however, that the same is true for claims on behalf of a Plan.  *See Eslava v. Gulf Telephone Co.*, No. 04 00297 KD B, 2007 WL 2298222, at *1 (S.D. Ala. Aug. 7, 2007) (plaintiffs' claim for relief on behalf of ERISA plan does not require individualized determinations for statute of limitations purposes).

Though statute of limitations defenses can preclude class treatment in certain situations, the Court does not believe this is such a case.  Defendants rely on *Barnes v. American Tobacco Co.* to support their argument that individual statute of limitations determinations preclude class certification.  *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 149 (3d Cir. 1998).  But *Barnes* is distinguishable from this case.  In that case, the Third Circuit determined that class treatment for smokers' claims against tobacco companies was inappropriate because extensive, individualized inquiries into smoking behavior by individual members of the putative class would be necessary to determine when their claims had accrued.  *Id.*  The court emphasized the risk that "a class action [could] devolve into a lengthy series of individual trials" to determine individual issues of the putative class members' "nicotine addiction, causation, the need for medical monitoring, [and] contributory/comparative negligence," in addition to the question of when individual claims accrued.  *Id.*

In this case, there is no comparable risk that litigation involving a certified class will "devolve into a lengthy series of individual trials," again because the claims here are brought under ERISA sections 409 and 502(a)(2) on behalf of the Plan. In contrast to the tort claims in *Barnes*, such actions, by definition, cannot be brought as individual causes of action. As such, the Court is not persuaded that individualized inquiries into plaintiffs' knowledge of defendants' alleged fiduciary breaches will be necessary to an extent that precludes a finding of typicality.

### d. Fair and adequate representation of the class

Rule 23(a)(4) requires that the named plaintiffs fairly and adequately represent the class as a whole. A plaintiff is an adequate representative so long as his claim is not in conflict with or antagonistic to those of other class members. *See Retired Chicago Police Ass'n*, 7 F.3d at 598. Courts do not deny class certification on speculative or hypothetical conflicts. *See Rosario*, 963 F.2d at 1018-19.

Defendants contend that class conflicts undercut the named plaintiffs' ability to represent the class adequately. They rely on an expert report by David Ross to argue that under the seller-purchaser theory, conflicts amongst class members would make it nearly impossible to maintain a class action in an ERISA suit. *See* Tellabs Ex. F.

The Court has considered Mr. Ross's report in its evaluation of this motion. Though his extensive background as an expert witness is impressive, his report does not amount to a legal conclusion regarding potential class conflicts. He essentially advocates the Court's adoption of the theory of "seller-purchaser" conflicts, which originates in securities law.[3]

---

[3] The seller-purchaser conflicts theory holds that

> in a case where manipulation of the price of a stock is alleged, individual holders of the stock necessarily will have bought and sold at different times and thus will

In *Lively v. Dynergy*, the court reviewed a similar expert report from Mr. Ross submitted in an ERISA breach of fiduciary duty case. The court was unpersuaded that Mr. Ross's evidence showed intraclass conflicts that would defeat adequacy under Rule 23(a)(4). The court noted that seller-purchaser theory has been rejected in a majority of securities-fraud cases, the litigation context in which it was originally developed. *Lively*, 2007 WL 685861, at *12 (collecting cases). It rejected the idea that the theory should have any greater force in ERISA litigation than in securities-fraud cases:

> [J]ust as the theory of seller-purchaser conflicts appear to render it impossible to maintain a class action based on the alleged manipulation of the value of a stock in the securities context, so too it appears to rule out the possibility of maintaining a class action based on a fiduciary's imprudent investment decisions. The Court finds such a position impossible to reconcile with the familiar principle that ERISA is a remedial statute to be liberally construed in favor of employee benefit fund participants.

*Lively*, 2007 WL 685861, at *13 (internal citations and quotation marks omitted). Moreover, the *Lively* court rejected the idea of seller-purchaser conflict in suits for fiduciary breaches brought under ERISA § 502(a)(2), since "recovery in this case is on behalf of the Plan and is the same with respect to each Plaintiff and unnamed class member, that is, all of the loss to the Plan caused by the alleged fiduciary breaches." *Id.*[4]

---

> differ with respect to what they contend would have been the stock's unmanipulated price, so that no holder of the stock is capable of representing another holder in a class action.

*See Lively*, 2007 WL 685861, at *12. Courts have overwhelmingly rejected the seller-purchaser conflicts theory as precluding class certification in securities fraud class actions. *See id.* (citing cases rejecting the seller-purchaser conflict theory because such a conflict does not preclude a finding of typicality when any differences in the proof of damages are peripheral and, in the end, are substantially outweighed by the class' common interests).

[4] Of course, as *Langbecker* emphasizes, Plan participants' individual, ultimate recovery may vary. *Langbecker*, 476 F.3d at 315-16. Relief is not, as the *Lively* court somewhat

Plaintiffs here bring claims on behalf of the Plan, not for individual relief. As in *Lively*, the Court finds that its role is to determine whether the defendants breached their fiduciary duty to the Plan. Therefore, contrary to the thrust of seller-purchaser theory, there is no inherent conflict between the claims of the named plaintiffs and those of the putative class. As matters currently stand, the Court is persuaded that the named plaintiffs will fairly and adequately represent the class as a whole as required by Rule 23(a)(4).

At the same time, the Court takes seriously the risk highlighted in *Langbecker* and by defendants that variations in plaintiffs' investment decisions could hinder a named representative's ability to represent the class adequately. The *Langbecker* court cautioned that the date on which a breach of fiduciary duty is determined to have taken place carries implications not only for "dividing the pie at recovery," but also for discovery and trial strategy: "The facts, once known, may bear out different legitimate theories as to when the [company-stock fund] became an imprudent investment." *Langbecker*, 476 F.3d at 315. Under this scenario, the need for class counsel to decide among these theories could pit the interests of some class members against others.

The Court notes, however, that the Fifth Circuit in *Langbecker* instructed the lower court to consider on remand the need to certify subclasses of plan participants whose interests could

---

imprecisely held, "the same with respect to each Plaintiff and unnamed class member" in this sense. *Lively*, 2007 WL 685861, at *13. Yet *Langbecker* and other cases distinguish between recovery by the plan and "dividing the pie" among individual participants afterward. *See Langbecker*, 476 F.3d at 315-16; *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 235 (3rd Cir. 2005). In *Langbecker*, the likelihood that participants would take home differently sized slices of the pie recovered on the plan's behalf did not rule out adequacy, although it did prompt the Fifth Circuit to admonish the lower court to consider the need for sub-classes on remand. *Id.* at 316.

conflict. *Id*. at 316. As noted above in its discussion of the releases' effect on typicality, and pursuant to *Langbecker*'s guidance, the Court is prepared to monitor conflicts that may arise within the class it certifies today and to consider the corresponding need for subclasses as the case develops.

## 2.    Rule 23(b) requirements

After fulfilling the requirements of Rule 23(a), plaintiffs must also meet one of the subsections of Rule 23(b). Plaintiffs contend that they can meet both the requirements of Rule 23(b)(1) and 23(b)(2). Rule 23(b)(1) allows for certification of the class if:

> [T]he prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). Though the Supreme Court has cautioned that Rule 23(b)(1) should be "narrowly interpreted," it also advised that "[a]mong the traditional varieties of representative suit encompassed by Rule 23(b)(1)(B) were those involving the 'presence of property which called for distribution or management.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999) (citations omitted).

Plaintiffs bring their claims on behalf of the Plan as a whole to recover benefits owed under the Plan. Any recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA. *See In Re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 235 (3d Cir. 2005) (plan participants' claims are on behalf of the plan to recover Plan's losses due to breach of fiduciary duty); *Kuper v.*

*Iovenko*, 66 F.3d 1447, 1452-53 (6th Cir. 1995) (explaining that "breaches of fiduciary duty injure the plan and, therefore, any recovery should go to the plan"). Because plaintiffs bring their claims on behalf of the Plan, adjudications of the representative plaintiffs' suit would, as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan. Further, adjudication of the claims involves the recovery and distribution of Plan assets on behalf of the Plan rather than determination of personal causes of action brought by individuals. As a result, separate actions by individual plaintiffs would impair the ability of other participants to protect their interests if the suit proceeded outside of a class context. Plaintiffs therefore meet the requirements of Rule 23(b)(1).

Plaintiffs also argue that the proposed class meets the requirements of Rule 23(b)(2). Under Rule 23(b)(2), a class may be certified if: "[T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). Plaintiffs have not attempted to show how Rule 23(b)(2) applies to their proposed class. The Court therefore rejects plaintiffs' request to certify the class under Rule 23(b)(2).

**3.      Adequacy of Plaintiffs' Counsel**

Tellabs has not contested the ability of the proposed plaintiffs' counsel to serve as class counsel. The Court has reviewed the qualifications of proposed class counsel and finds that they meet the requirements of Rule 23(g). As requested, the Court appoints the law firms of Schiffrin Barroway Topaz & Kessler, LLP, Harwood Feffer LLP, the Weiser Law Firm P.C., and Lasky and Rifkind, Ltd. to serve as class counsel.

The Court cautions, however, that its designation of multiple firms as class counsel is not intended as an invitation for duplication of effort. The Court will rely upon counsel to staff the case and assign tasks in an intelligent and effective manner.

## Conclusion

For the foregoing reasons, the Court grants plaintiffs' motion for class certification [docket no. 83]. The Court certifies the following class under Rule 23: All persons who were participants in or beneficiaries of the Tellabs, Inc. Profit Sharing and Savings Plan at any time between December 11, 2000 and July 1, 2003 and whose accounts included investments in Tellabs stock. The parties are directed to appear for a status hearing on October 2, 2007 at 9:30 a.m. for the purpose of addressing the subjects of class notice (if notice is required) and a schedule for the completion of discovery. The parties are also directed to confer regarding these topics in advance of the status hearing to attempt to reach an agreement to be presented to the Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 19, 2007