# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DON BRIEGER, ROBERT BECKER, ALAN BURSTIN, HARRY SCHULTZ, and PAULA MITCHELL, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> TELLABS, INC., et al., <br><br> Defendants. | Case No. 1:06-cv-1882 <br><br> Judge Matthew F. Kennelly |

**PLAINTIFFS' MOTION AND MEMORANDUM *IN LIMINE* TO BAR EXPERT TESTIMONY OF KENNETH M. LEHN, DAVID J. ROSS, AND LAURA T. STARKS, AND TO BAR DEFENDANTS' ASSERTION OF AN AFFIRMATIVE DEFENSE <u>PURSUANT TO ERISA SECTION 404(c)</u>**

# TABLE OF CONTENTS

A.  This Court Should Bar Testimony of Lehn and Ross Pursuant to FRE 702.............. 1

    1.  Lehn's Opinions Regarding Plaintiffs' Damages Are Neither Reliable Nor Relevant ................................................................................................................ 2

    2.  Lehn's Opinions Regarding Saul Solomon's Opinions, Which Are Simply a Critique of ERISA Damages Jurisprudence, Are Neither Reliable Nor Relevant ................................................................................................................ 8

    3.  Ross' Testimony Should Be Barred............................................................ 8

        a.  Mr. Ross' Testimony Concerning Intra-Class Conflicts Are Not Relevant ................................................................................................ 8

        b.  Mr. Ross' Testimony Concerning the Prudence of Tellabs Stock Should Also Be Barred ................................................................... 10

B.  Starks' Testimony Regarding the Activities of Institutional Investors as a Basis for Her Opinion that Tellabs Stock Was a Prudent Investment Option For the Plan Is Unreliable, Irrelevant and Unduly Prejudicial ..................................................... 11

C.  This Court Should Bar Defendants From Presenting Evidence or Argument of An Affirmative Defense Under ERISA Section 404(c) ............................................... 13

## **TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Ass'n Benefit Serv., Inc. v. AdvancePCS Holding Corp.*,
  No. 04-CV-3271, 2005 WL 2335484 (N.D. Ill. 2005)..........................................................1, 2

*Beesley v. Int'l Paper Co.*,
  No. 06-CV-00703, 2008 WL 4450319 (S.D. Ill. Sept. 30, 2008)............................................9

*Boyle v. RJW Transport, Inc.*,
  No. 05-CV-1082, 2008 WL 4877108 (N.D. Ill. June 20, 2008)..............................................7

*Brieger v. Tellabs*,
  245 F.R.D. 345 (N.D. Ill. 2007)...................................................................................8, 9, 13

*Dahlin v. Evangelical Child & Family Agency*,
  No. 01-CV-1182, 2002 WL 31834881 (N.D. Ill. 2002)..........................................................1

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ..........................................1, 2, 10

*Defelice v. U.S. Airways, Inc.*,
  497 Fed 410, 423 (4th Cir. 2007).......................................................................................13

*Donovan v. Bierwirth*,
  754 F.2d 1049 (2d Cir. 1985)...............................................................................................3

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ....................................................................................................4, 5, 6

*Evans v. Akers*,
  534 F.3d 65 (1st Cir. 2008)...............................................................................................3, 7

*Gerlib v. R.R. Donnelley & Sons Co.*,
  No. 95-CV-7401, 2002 U.S. Dist. LEXIS 10023 ..................................................................2

*Graden v. Conexant Sys., Inc.*,
  496 F.3d 291 (3d Cir. 2007) .................................................................................................4

*Harzewsk v. Guidant Corp.*,
  489 F.3d 799 (7th Cir. 2007) ................................................................................................3

*Herman v. Nationsbank Trust Co.*,
  126 F.3d 1354 (11th Cir. 1997).........................................................................................12

*Howell v. Motorola, Inc.*,
　No. 03-CV-5044 (N.D. Ill. Sept. 28, 2007) .................................................................................9

*In re Aquila ERISA Litig.*,
　237 F.R.D. 202 (W.D. Mo. 2006) ............................................................................................9

*In re Enron Corp. Sec. Derivative & ERISA Litig.*,
　284 F. Supp. 2d 511 (S.D. Tex. 2003).....................................................................................14

*In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*,
　MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009) ......................................................9

*Leigh v. Engle*,
　858 F.2d 361 (7th Cir. 1988) ....................................................................................................4

*Lively v. Dynegy*,
　No. 05-CV-0063, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) ...................................................9

*Naeem v. McKesson Drug Co.*,
　444 F.3d 593 (7th Cir. 2006) ....................................................................................................1

*O'Conner v. Commonwealth Edison Co.*,
　13 F.3d 1090 (7th Cir. 1994) ...............................................................................................2, 10

*Smith v. Ford Motor Co.*,
　215 F.3d 713 (7th Cir. 2000) ....................................................................................................2

*Vaughn v. Bay Environmental Mgm't, Inc.*,
　544 F.3d 1008 (9th Cir. 2008) ..................................................................................................4

*Watkins v. Telsmith, Inc.*,
　121 F.3d 984 (5th Cir. 1997) ....................................................................................................2

**FEDERAL STATUTES**

§ 404(c), 29 U.S.C. § 1104(c) ............................................................................................. passim

§ 409(a), 29 U.S.C. § 1109(a)......................................................................................................3

**REGULATIONS**

29 C.F.R. § 2250.404(c)-1............................................................................................... 12, 14

29 C.F.R. § 2550.404(c)-1(a)(1) .................................................................................................13

29 C.F.R. § 2550.404(c)-1(c)(2)(ii) ............................................................................................14

Plaintiffs Don Brieger, Robert Becker, Alan Burstin, Harry Schultz and Paula Mitchell ("Plaintiffs"), by and through their undersigned counsel, respectfully move the Court to enter an Order: (i) barring the testimony of Defendants' expert witnesses Kenneth M. Lehn ("Lehn") and David J. Ross ("Ross") pursuant to Federal Rule of Evidence ("FRE") 702; (ii) limiting the testimony of Defendants' expert witness Laura T. Starks ("Starks") pursuant to FRE 403 and FRE 703; and (iii) excluding evidence pertaining to an affirmative defense raised under ERISA Section 404(c) pursuant to FRE 401 and 403.[1]

**A.      This Court Should Bar Testimony of Lehn and Ross Pursuant to FRE 702**

The admissibility of expert testimony is governed by FRE 702, as well as *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006); *see also, Dahlin v. Evangelical Child & Family Agency*, No. 01-CV-1182, 2002 WL 31834881 (N.D. Ill. Dec. 18, 2002)[2] ("Federal Rule of Evidence 702, which essentially restates the *Daubert* criteria, applies to all expert opinions…. "). FRE 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under *Daubert*, a district court must conduct a two-step analysis to determine the admissibility of expert testimony under FRE 702. *Ass'n Benefit Serv., Inc. v. AdvancePCS*

---

[1] Pursuant to Local Rule 37.2, Plaintiffs' Counsel met and conferred with defense Counsel on March 19, 2009 in an attempt to resolve the issues raised herein but were unable to reach agreement.

[2] Attached to the Declaration of Peter A. Muhic ("Muhic Decl.") filed herewith as Exhibit G are copies of all unpublished opinions cited herein.

*Holding Corp.*, No. 04-CV-3271, 2005 WL 2335484, at *3 (N.D. Ill. Sept. 23, 2005). "First, the court must determine whether the expert's testimony reflects scientific knowledge; that is, the court must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Id.* (*citing Daubert*, 509 U.S. at 592-93).

The second part of the *Daubert* analysis requires the district court to determine "whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Id.* at 616. In other words, "the suggested scientific testimony must 'fit' the issue to which the expert is testifying." *Id.*; *see also, O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106 (7th Cir. 1994). "[T]o be admissible, the expert testimony must be both reliable and relevant." *Gerlib v. R.R. Donnelley & Sons Co.*, No. 95-CV-7401, 2002 U.S. Dist. LEXIS 10023, at **17-18 (N.D. Ill. June 3, 2002). *Daubert* and FRE 702 in tandem "demand that the district court evaluate the methods, analysis, and principles relied upon in reaching the opinion." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997).

### 1. Lehn's Opinions Regarding Plaintiffs' Damages Are Neither Reliable Nor Relevant

Lehn, Defendants' proffered damages expert, utilizes the wrong methodology in calculating damages for breaches of fiduciary duty under ERISA, which alone should exclude his proffered testimony. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("In analyzing the reliability of proposed expert testimony, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions"). Lehn's analysis is simply irrelevant and inapplicable to Plaintiffs' ERISA claims arising from the imprudent management of the assets of the Tellabs Advantage Program (the "Plan").

2

Lehn employs a methodology which may be acceptable in connection with a claim brought under the federal securities laws, but which is wholly inapposite to an ERISA breach of fiduciary duty claim.

In this action, Plaintiffs seek to recover on behalf of the Plan an amount which represents losses to the Plan as a result of Defendants' breach of their ERISA fiduciary and co-fiduciary duties to prudently and loyally manage Plan investments, and their concomitant duties to monitor other fiduciaries and to provide complete and accurate information to Plan Participants.  Plaintiffs thus seek for the Plan to be "made-whole" consistent with black letter ERISA jurisprudence.

The method for calculating the amount of losses to the Plan attributable to Defendants' breaches of fiduciary duties under ERISA differs materially from the method for calculating damages in a securities action.  In particular, ERISA Section 409(a), 29 U.S.C. § 1109(a), provides that any person who breaches a fiduciary duty imposed by the statute "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach…."  Losses to a plan resulting from breaches of the duty of prudence "may be ascertained, with the help of expert analysis, ***by comparing the performance of the imprudent investments with the performance of a prudently invested portfolio***." *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008) (emphasis added).  Further:

> In determining what the Plan would have earned had the funds been available for other Plan purposes, the district court should presume that the funds would have been treated like other funds being invested during the same period in proper transactions. ***Where several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these***.

*Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) (emphasis added).  This methodology has been set forth by the Seventh Circuit in analogous cases.  *Harzewsk v.*

3

*Guidant Corp.*, 489 F.3d 799, 807 (7th Cir. 2007) ("[A] breach of fiduciary duty that diminishes th[e] value [of Plan retirement benefits] gives rise to a claim for benefits measured by the difference between what the retirement account was worth when the employee retired and cashed it out and what it would have been worth then had it not been for the breach of fiduciary duty."); *Leigh v. Engle*, 858 F.2d 361, 367 (7th Cir. 1988) (noting that "Judge Duff undertook the straightforward approach of comparing the return on the improper investments with that of a reasonably prudent alternative investment . . . . We do not believe he abused his discretion.")[3]

Here, Lehn *concedes* that he never addressed or analyzed the performance of any alternative investments when formulating his damages opinion. Indeed, Lehn has repeatedly characterized as "irrelevant" and "conceptually flawed" the recognized measure of damages for breaches of ERISA duties.[4] Further, Lehn solely focused on securities action inspired price inflation damages arising from certain of Defendants' alleged misrepresentations - ignoring Plaintiffs' primary claim of imprudent investment of Plan assets - and admits that he utilized the damages methodology employed in securities cases. Specifically, Lehn testified that he performed an analysis of "inflation damages" which he characterized as "*Dura* style damages," referring to the methodology endorsed by the Supreme Court in the securities case, *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). *See* Ex. A at 139:18-142:9. This methodology does not apply in an ERISA breach of fiduciary duty case. *See generally, Harzewski*, 489 F.3d at

---

[3] *See also Graden v. Conexant Sys., Inc*., 496 F.3d 291, 301 (3d Cir. 2007) (citing *Donovan*, 754 F.2d at 1056); *Vaughn v. Bay Environmental Mgm't, Inc.*, 544 F.3d 1008, 1012 (9th Cir. 2008) ("[Plaintiff] seeks the difference between the benefit he received and what he would have received if the Plans' assets had been prudently invested. This amount is ascertainable through expert testimony or other evidence regarding investment returns during the relevant period.").

[4] *See* Lehn Deposition, relevant pages attached to the Muhic Decl. as Exhibit A at 86:9, 88:7, 89:17-18.

4

(noting distinctions between ERISA breach of fiduciary duty claim and securities fraud claim).

Lehn's glaring, mistaken perception of the appropriate measure of damages in this case is readily apparent from his deposition testimony:

> Q. Okay. Do you agree if[,] during the class period[,] the Plan participants had been invested in one or more of the three alternative investments identified by Mr. Solomon[,] rather than being invested in Tellabs[,] that the participants would have had positive returns on their investment instead of losses?
> [Objection]
> A. Mathematically that may be correct, but I don't see where that calculation has anything to do with damages. So mathematically that is likely the case, but to me it is irrelevant.

*Id*. at 85:22-86:9.

> Q. Well, let me ask it this way. When doing your calculations in your report in forming your opinion, did you calculate the damage to the Plan as a whole resulting from the Fiduciary's decision to allow the Plan to invest in Tellabs' stock during the class period?
> [Objection]
> A. Well, again, as I indicated earlier, I was asked to estimate damages associated with the alleged misrepresentation, which I believe I have done.
>
> * * *
>
> Q. And assuming that the Tellabs Stock Fund was an imprudent investment for whatever reason, you didn't perform a calculation to determine damages under any alternative investment in a prudent investment; is that correct?
> [Objection]
> A. You know, again, as I indicated earlier, ***I don't think that's a proper methodology*** for estimating damages, so I have not done that calculation except for in the context of critiquing Mr. Solomon's work.

*Id*. at 154:21-156:2 (emphasis added).

> Q. … I think you have a dispute with more the theory employed by Mr. Solomon; is that fair to say?
>
> A. A theory, but, you know, the theory sounds as if it's purely an academic debate. It's just wrong. I mean, it's fundamentally wrong, and it's conceptually flawed. In no way does the

5

> mathematical computation done by Mr. Solomon provide measure the damages associated with the alleged misrepresentation in this matter. And it is conceptually flawed to consider what some alternative investment would have earned. That's just a fictitious number. So one can do the math, but it has nothing to do with damages.

*Id*. at 87:21-11; *see also id*. at 175:15-16 ("I think the whole notion of alternative investment approach is ill-founded."). In fact, Lehn seemingly recognizes his divergent view and has invited a ruling from the Court in this regard:

> Q. In short, based on what you've just stated in your answer, you believe that the damages that you calculated and set forth in your report regarding the misrepresentations would be the proper way to show damages in this case?
> [Objection]
> A. ***That's ultimately a legal issue for others to decide.*** What I do know is that this case does involve an alleged misrepresentation. And if one is trying to measure losses suffered because of the alleged misrepresentation, there are tools available to do so. ***Whereas, the tools are frequently in securities litigation, in this particular matter, the tools are appropriate to use*** to measure losses to holders of Tellabs stock and the Tellabs Advantage Plan ***insofar that the alleged wrongdoing was an alleged misrepresentation.***

*Id*. at 89:19-90:13 (emphasis added).[5]

As noted above, the applicable ERISA case law provides that the proper measure of damages in a case such as this, where Plaintiffs allege that Defendants breached their fiduciary duties to prudently and loyally manage Plan investments, necessarily involves a calculation and comparison of the loss of benefits to the Plan, or what the Plan actually earned, with what it would have earned had the Plan only included prudent investment alternatives. Lehn's failure to employ the proper methodology, or to even consider the

---

[5] As this Court recognized in denying Defendants' recent motion for summary judgment, and contrary to Lehn's assumptions and employed methodology, "Plaintiffs' claim is not simply for affirmative misrepresentations, but instead "Plaintiffs have alleged that defendants failed to prudently and loyally manage investments, provide complete information (*i.e.*, made material omissions), monitor other fiduciaries, and provide other fiduciaries with accurate information." [Dkt. #224]

6

factors relevant to calculating losses in an ERISA breach of fiduciary duty case, renders all of his opinions, including the opinion that "there is no basis to conclude that Plan stock holders suffered a statistically significant loss over the Class Period,"[6] wholly unreliable and irrelevant to the issues in dispute. Accordingly, this Court should bar such testimony under FRE 702.[7]

    **2.    Lehn's Opinions Regarding Saul Solomon's Opinions, Which Are Simply a Critique of ERISA Damages Jurisprudence, Are Neither Reliable Nor Relevant**

Likewise, Lehn's opinions regarding the conclusions of Plaintiffs' expert, Mr. Solomon, are unreliable and irrelevant. Lehn's opinions reflect, in essence, his personal disagreement with the judicially-accepted economic and equitable approach to calculating ERISA fiduciary breach damages. As discussed above, Lehn's personal views are contrary to the law and should be barred from trial. *See* Muhic Decl. at 27-29, Muhic Decl. Ex. A at 174:20-16. Notably, Lehn's view that an analysis of alternative investments is "ill-founded" and fundamentally "wrong" is completely at odds with the controlling case law, which compels the precise type of analysis Mr. Solomon employed. As Lehn himself

---

[6] Expert Report of Kenneth M. Lehn, Muhic Decl., Ex. B at p. 12, ¶ 35.

[7] Plaintiffs respectfully submit that Lehn's personal opinion as to the decline in the price of Tellabs stock resulting from a downturn in the industry and not from misrepresentations (*see* Muhic Decl., Ex. B, Section VI), as well as the impact of particular disclosures on Tellabs' stock price (*see* Muhic Decl., Ex. B., Section VII), must be excluded because they are both irrelevant to the issues before the Court and outside the scope of Lehn's purported expertise. *Boyle v. RJW Transport, Inc.*, No. 05-CV-1082, 2008 WL 4877108, at *3 (N.D. Ill. June 20, 2008) (expert testimony may not offer legal conclusions that are outcome determinative). While such analysis might be relevant to claims brought under the federal securities laws, and it is true that a prudent fiduciary must take into account all relevant factors, including industry health, when evaluating the prudence of maintaining Plan investment alternatives, Lehn fails to address any of the factors that this Court must consider in determining damages in this ERISA case. Because Lehn's opinions and conclusions regarding losses experienced by the Plaintiffs using a securities damages model will not assist the Court in "comparing the performance of the imprudent investments with the performance of a prudently invested portfolio," *see Evans*, 534 F.3d at 74, they are irrelevant and must be excluded.

7

acknowledges, he does not have "any real quarrel" with Mr. Solomon's mathematical calculations. Muhic Decl., Ex. A at 86:11-17.[8] Thus, his quarrel is essentially one with the standard imposed by law and is not properly the subject of expert testimony. Accordingly, such testimony must be excluded from trial.

### 3. Ross' Testimony Should Be Barred

#### a. Mr. Ross' Testimony Concerning Intra-Class Conflicts Are Not Relevant

During the Class Certification stage of this litigation, Defendants offered testimony of Ross in opposition to Plaintiffs' motion for Class Certification. Ultimately, this Court rejected Ross' testimony and, in certifying the class in this case, stated:

> The Court has considered Mr. Ross's report in its evaluation of this motion.... He essentially advocates the Court's adoption of the theory of 'seller-purchaser' conflicts, which originates in securities law. . . . [But], contrary to the thrust of seller-purchaser theory, there is no inherent conflict between the claims of the named plaintiffs and those of the putative class.

*Brieger v. Tellabs*, 245 F.R.D. 345, 355, 356 (N.D. Ill. 2007). In the event that Defendants seek to resurrect Ross' opinions for purposes of trial, Plaintiffs seek to exclude all evidence and argument concerning whether Plaintiffs or the class suffered from intra-class conflicts. Since the class has already been certified, Ross' testimony is irrelevant to any of the issues to be tried. Moreover, Ross' testimony is inadmissible under FRE 702 because it is unreliable.

Ross's opinions on the purported existence of intra-class conflicts are based upon a fundamentally flawed premise that has been widely rejected by courts throughout the country – including this Court – and should therefore be stricken or excluded. Specifically, Ross

---

[8] In fact, Mr. Lehn acknowledges that when the data set he had access to is used to calculate damages using Mr. Solomon's methodology, the damages are slightly greater than those calculated by Mr. Solomon. Muhic Decl., Ex. A at 182:5-25.

8

suggests that Plan participants may have conflicting interests concerning the date on which to allege the Tellabs Stock Fund became an imprudent investment option for the Plan because each Plan participant is incentivized to choose an optimal date to maximize his or her own individual losses. *See* Ross Declaration, Muhic Decl., Ex. C at 6. However, Ross fails to recognize that Plaintiffs bring their claims on behalf of the Plan – not for individual relief. *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 356 (N.D. Ill. 2007). Therefore, none of the potential "conflicts" that concern Ross are cognizable.

Predictably, the overwhelming majority of courts presiding over ERISA breach-of-fiduciary actions analogous to the instant one have roundly rejected Ross' findings. *See, e.g., In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *14 (D.N.J. Feb. 10, 2009) ("Defendants [proffer an expert report], which makes the case that class members' damages could vary depending on the date found to be the date on which MCSF became an imprudent investment, thus creating conflicts of interest over that date …this Court can only conclude that the anticipated conflict is too speculative…."); *Lively v. Dynegy*, No. 05-CV-0063, 2007 WL 685861, at *12 (S.D. Ill. Mar. 2, 2007) (rejecting Ross' "seller-purchaser" analysis in the ERISA context); *Beesley v. Int'l Paper Co.*, No. 06-CV-00703, 2008 WL 4450319, at *8 (S.D. Ill. Sept. 30, 2008) (same).[9]

Because Ross' opinions are so fundamentally flawed that they are neither reliable nor helpful in determining whether Plaintiffs have established the requirements of class

---

[9] *See also, In re Aquila ERISA Litig.*, 237 F.R.D. 202, 208 (W.D. Mo. 2006) ("While it may be true that each Plan participant who invested in the Company Stock Fund has an optimal prudence date, this fact alone does not defeat [Plaintiff's] typicality. This is so because, it is also true that the Plan has a single 'optimal imprudence date,' and as this lawsuit is brought on behalf of the Plan, individual participants' 'optimal imprudence dates' are irrelevant.") (*quoting DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78-79 (E.D. Va. 2006)); *Howell v. Motorola, Inc.*, No. 03-CV-5044 (N.D. Ill.) (Sept. 28, 2007 Order certifying class) (in rejecting Ross' expert analysis, the court noted that "any individual differences in [participants'] investment posture does not, at this stage, preclude class certification").

9

certification under Rule 23 of the Federal Rules of Civil Procedure, this Court should exclude such opinions at trial.

### b. Mr. Ross' Testimony Concerning the Prudence of Tellabs Stock Should Also Be Barred

Defendants may also seek to present testimony from Mr. Ross concerning the prudence of Tellabs stock. This testimony should not be permitted. At his deposition, Mr. Ross testified that he is not opining on the prudence of Tellabs stock in this case:

> Q. You make no conclusions or have an opinion in this case that one way or the other that the Tellabs stock was imprudent, do you?
>
> A. **Correct.** The declaration ***does not*** reach any conclusions one way or another regarding either whether Tellabs stock was an imprudent investment at any time during the proposed class period or whether the stock price was artificially inflated during the proposed class period or whether there was a breach of any duty during the proposed class period.

*See* Muhic Decl., Ex. D at 80:8-18 (emphasis added). The second part of the *Daubert* analysis requires that "the suggested scientific testimony [] 'fit' the issue to which the expert is testifying." *Daubert,* 509 U.S. at 616; *see also, O'Conner v. Commonwealth Edison Co.*, 13 F.3d at 1106. Since Mr. Ross is not testifying on the prudence of Tellabs stock, any testimony on that subject is not permissible.

### B. Starks' Testimony Regarding the Activities of Institutional Investors as a Basis for Her Opinion that Tellabs Stock Was a Prudent Investment Option For the Plan Is Unreliable, Irrelevant and Unduly Prejudicial

Plaintiffs expect that Defendants' purported substantive and procedural process expert, Starks, will attempt to testify regarding the actions of institutional investors as a basis for her opinion that the Tellabs Stock Fund was a prudent investment for the Tellabs Plan during the Class Period. Such testimony or evidence regarding the actions of certain institutional investors, however, is unreliable, irrelevant, and unduly prejudicial because institutional investors are not ERISA fiduciaries bound by the same duties of care and loyalty

as the Defendants in this case. Indeed, as noted below, Starks admits that many such institutional investors have reasons for purchasing stocks that differ from what an ERISA fiduciary must consider when evaluating the substantive prudence of an investment option for a 401(k) savings plan such as the Plan. Accordingly, the mere fact that some institutional investors purchased Tellabs stock during the Class Period should be inadmissible pursuant to FRE 403 and 703.

During her deposition, Starks admitted that "it would be helpful to know" whether certain laws govern the prudence of the investments of institutional investors, but that she had never bothered to determine if such laws were in place. Starks Deposition, Muhic Decl., Ex. E, at 183:15-20. Indeed, Starks concedes: "I didn't take each institutional investor and look at what laws govern them." *Id*. at 183:9-14. Starks further concedes that she could not say "one way or the other" whether institutional investors had similar investment goals as participants in a 401(k) plan.[10] *Id*. at 190:22-23. Starks further testified:

> Q. Do you agree that what an institutional investor determines might be appropriate for an investment may be inappropriate for a fiduciary when determining whether an investment is a prudent option for a 401(k) plan?
> [objection]
> A. I'm not sure. I mean, you know, there's some institutional investors that have very different risk tolerances, preferences, than – than – than what you would want in a 401(k) plan, but there are others that don't.

*Id*. at p. 194:16-25 – 195:1.

---

[10] Starks continued down the path of equivocation by testifying:

> Q. Do you agree that the goals of institutional investors are not necessarily similar to the goals of an investor or plan participants in a 401(k) plan?
> [objection]
> A. I think they may be similar, I think they may not be similar.

*Id*. at 190:14-20.

11

Since Starks admittedly does not know the institutional investors' goals, risk tolerances, or whether they were even governed by ERISA, their actions in purchasing Tellabs stock, upon which Starks bases her opinions, have no indicia of reliability and are not relevant as to whether the Tellabs Stock Fund was a substantively prudent investment for the Tellabs Plan. *Id*. at 182:7-12. Accordingly, this Court should bar any evidence regarding the actions of institutional investors upon which Starks bases her opinions.

**C.  This Court Should Bar Defendants From Presenting Evidence or Argument of An Affirmative Defense Under ERISA Section 404(c)**

Plaintiffs seek to bar Defendants from offering evidence, testimony or argument of an affirmative defense under ERISA Section 404(c), 29 U.S.C. § 1104(c) because such evidence is not relevant under FRE 401 and would cause confusion, undue delay or a waste of time under FRE 403.

ERISA Section 404(c) states:

In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary) –

   (B) no such person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.  29 U.S.C. § 1104(c).

By its very language, Section 404(c) does not apply to plans over which a participant or beneficiary does not have control. *See* 29 C.F.R. § 2550.404c-1 (1996); *Herman v. Nationsbank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997). It is undisputed that during the Class Period, the Tellabs Retirement Plan (one portion of the Tellabs Advantage Program) made automatic contributions to the Tellabs stock fun, thereby removing any

12

ability by the participant to exercise control over the assets in an account. Thus, the Section 404(c) defense is not relevant to the prosecution of claims related to the Retirement Plan.

In this case, during part of the relevant period, Plan participants received "vacation rollover" contributions based upon the value of up to one week of otherwise forfeited vacation time, subject to certain limitations. *See* Tellabs Advantage Program – Summary Plan Description, effective (July 1999) ("Tellabs SPD"), Muhic Decl., Ex. F, at 11. The contributions were made to the Tellabs Retirement Plan portion of the Plan and were directed by Plan fiduciaries exclusively to the Tellabs Stock Fund. *Id.* Tellabs also made quarterly contributions to the Retirement Program portion of the Plan. *See Tellabs* SPD. Specifically, contributions equal to 0.5% of each eligible participant's eligible compensation were made to the Savings Plan portion of the Plan ("Profit Sharing Contributions") and were automatically invested in the Tellabs Stock Fund, not to be transferred until Plan participants turned 55. *Id.*

As a threshold matter, none of the aforementioned contributions are entitled to protection under ERISA Section 404(c) since they were made or invested, by or through, the sole discretion of the Company. Further, ERISA Section 404(c) does not shield a fiduciary from liability for selecting or allowing imprudent investment options in a Plan. *See* 29 C.F.R. §2550.404(c)-1(a)(1). Department of Labor (DOL); *see also* Fed. Reg./Vol. 73, No. 142/July 23, 2008/Proposed Rules (effective Jan. 1, 2009) ("Paragraph (f) makes clear that nothing in the regulation would relieve a fiduciary of its responsibilities to prudently select and monitor . . . the investments made available under the plan (*i.e.*, designated investment alternatives)"). *See, e.g., Defelice v. U.S. Airways, Inc.*, 497 Fed 410, 423 (4th Cir. 2007) ("a fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants"); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 351 (N.D. Ill.

2007) (same). Hence, a pension plan's fiduciaries must avoid imprudent investment losses by taking plan protective action regarding the selection and maintenance of plan investment vehicles.

Lastly, section 404(c) is quite clear that what is meant by the ability to exercise control shall be determined by Department of Labor regulations. Specifically, 29 C.F.R. § 2250.404c-1 sets forth the applicable regulation for what is meant by "exercise of control." *Id*. ("This section describes . . . the circumstances in which a participant or beneficiary is considered to have exercised independent control over the assets in his account as contemplated by section 404(c)...."). The regulation further states: "[A] participant's or beneficiary's exercise of control is not independent in fact if: . ..(ii) A plan fiduciary has concealed material non-public facts regarding the investment from the participant or beneficiary, unless the disclosure of such information by the plan fiduciary would violate any provision of federal law or any provision of state law which is not preempted by the Act." 29 C.F.R. § 2550.404c-1(c)(2)(ii).

Therefore, Plan participants do not exercise independent control when fiduciaries have omitted or misrepresented material information about the Plan investments, and in such case, there is no defense under Section 404(c). Consequently, "[i]f a plan does not qualify as a § 404(c) [plan], ***the fiduciaries retain liability for all investment decisions made, including decisions by the Plan participants.***" *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 578 (S.D. Tex. 2003) (emphasis added).

Because a defense raised under ERISA Section 404(c) is not a viable defense that can be raised at trial, evidence pertaining to any such defense is both irrelevant and immaterial. Thus, such evidence should be excluded under FRE 401. Alternatively,

14

evidence pertaining to ERISA Section 404(c) should nonetheless be excluded under FRE 403 on the grounds that the minimally probative value of such evidence is substantially outweighed by confusion of the issues, undue delay, and waste of time at trial.

Dated: March 19, 2009                    Respectfully submitted,

**Barroway Topaz Kessler Meltzer & Check, LLP**

By:  /s/ Peter A. Muhic
Edward W. Ciolko, Esq.
Peter A. Muhic, Esq.
Mark K. Gyandoh, Esq.
Donna Siegel Moffa, Esq.
James A. Maro, Esq.
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706


**Harwood Feffer LLP**
Matthew M. Houston
488 Madison Avenue
New York, NY 10022
(212) 935-7400

**The Weiser Law Firm P.C.**
Robert B. Weiser, Esq.
Brett D. Stecker, Esq.
121 North Wayne Avenue, Suite 100
Wayne, PA 19087
(610) 225-2677

– and –

**Lasky & Rifkind, Ltd.**
Norman Rifkind, Esq.
Leigh R. Lasky, Esq.
350 N. LaSalle Street, Suite 1320
Chicago, Illinois 60610
(312) 634-0057

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I, Peter A. Muhic, one of the attorneys for Plaintiffs, hereby certify that on March 19, 2009, I electronically filed the foregoing with the Clerk of the Court using the court's Electronic Case Filing System, which will send notification of such filing to the following:

> Deborah S. Davidson
> Charles Clark Jackson
> Amy Marie Foran
> Julia Y. Trankiem
> Kirsten Milton Evans
> Sari M. Alamuddin
> Morgan Lewis & Bockius, LLP
> 77 West Wacker Drive
> 5th Floor
> Chicago, IL 60601

          /s/ Peter A. Muhic
          Peter A. Muhic