# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DON BRIEGER, ROBERT BECKER, ALAN BURSTIN, HARRY SCHULTZ, and PAULA MITCHELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TELLABS, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:06-cv-01882<br><br><br>)    Judge Matthew F. Kennelly |

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR BILL OF COSTS

Charles C. Jackson
Sari M. Alamuddin
Deborah S. Davidson
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
(312) 324-1000 Telephone
(312) 324-1001 Facsimile

August 13, 2009             *Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.    ERISA Section 502(g) Is Inapplicable To Defendants' Bill Of Costs, Which Is Governed By Rule 54(d). ...................................................................................... 2

II.    Defendants Are Entitled To An Award Of Costs Under ERISA Section 502(g). ............. 6

III.    Defendants Are Entitled To Taxable Costs In The Amount Of $1,474,191.11 ................. 7

    A.    Electronic Discovery ........................................................................................ 7

        1.    Electronic Discovery Has Become The Norm And Results In Higher Taxable Costs. ............................................................................. 7

        2.    The Costs Borne By Defendants Are The Direct Result Of Plaintiffs' Voluminous Electronic Discovery Requests. .......................... 9

        3.    The Costs Defendants Seek Were Necessary And Not For Counsel's "Convenience." ............................................................... 10

            a.    Creation Of TIFF Files. ............................................................. 10

            b.    Data Storage. ............................................................................. 11

            c.    Extraction Of Embedded Text And Metadata. ........................... 11

        4.    Defendants Do Not Seek Costs Attributable To Sidley Austin For The Securities Litigation. ........................................................... 13

    B.    Documents Used in Deposition Preparation. .................................................. 13

    C.    Trial Transcripts. ........................................................................................... 14

    D.    Demonstrative Trial Exhibits. ........................................................................ 14

CONCLUSION .................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Adidas America, Inc. v. Payless Shoesource, Inc.*, Nos. 01-1655-KI and CV 03-1116-KI, 2009 WL 302246 (D. Oregon Feb. 9, 2009) ............................................................. 9

*Armstrong v. Amsted Industries, Inc.*, No 01 C 2963, 2004 WL 2480998 (N.D. Ill. Nov. 3, 2004) ................................................................................................................. 4, 6

*Brown v. McGraw-Hill Cos.*, 526 F. Supp. 2d 950 (N.D. Iowa 2007) ........................................ 10

*Byers v. Illinois State Police,* No. 99 C 8105, 2002 WL 1264004 (N.D. Ill. June 3, 2002) ......... 10

*Chapman v. Choicecare Long Island Long Term Disability Income Plan*, No 05-0687, 2005 WL 3556194 (2d Cir. Dec. 29, 2005) ................................................................. 4

*Conrad Boat Corp. v. Brunswick Corp.*, No. 01-1355, 17 Fed. Appx. 491 (8th Cir. Aug. 27, 2001) ............................................................................................................... 8

*DiFelice v. US Airways, Inc.*, No. 1:04cv889, Dkt. No. 236 (E.D. Va. Oct. 6, 2006) ................... 3

*Fairley v. Andrews*, No. 03 C 5207*,* 2008 WL 961592 (N.D. Ill. Apr. 8, 2008) ......................... 17

*Fells v. VA DOT*, 605 F. Supp. 2d 740 (E.D. Va. 2009) ............................................................. 15

*Frazier v. Layne Christensen Co.*, No. 04 C 0315, 2007 WL 1453133 (W.D. Wis. Feb. 22, 2007) ............................................................................................................... 18

*Great Lakes Docks & Dredge Co. v. City of Chicago*, No. 94 C 2579, 2000 WL 1898533 (N.D. Ill. Sept. 18, 2000) ................................................................................... 17

*Hecker v. Deere, et al.*, 556 F.3d 575 (7th Cir. 2009) ..................................................... 3, 5, 8, 15

*Hecker v. Deere, et al.*, 569 F.3d 708 (7th Cir. 2009) .................................................................. 3

*Herman v. Cent. States. Se. and Sw. Areas Pension Fund*, No. 03-C-1010, 2003 WL 22955996 (N.D. Ill. Dec. 15, 2003) ................................................................................. 3

*Hyperphrase Technologies, LLC v. Google, Inc.*, No. 06-C-199-2, 2007 WL 5323773 (W.D. Wis. Apr. 7, 2007) ................................................................................... 10

*In re Williams Sec. Lit. - WCG Subclass*, 558 F.3d 1144 (10th Cir. 2009) ................................... 7

*Keach v. U.S. Trust Co., N.A.*, 338 F. Supp. 2d 931 (C.D. Ill. 2004) ........................................... 6

*Land v. Bartlow Bros., Inc.,* No. 06-3278, 2008 WL 2078045 (C.D. Ill. May 15, 2008) ............. 6

*Little v. Cox's Supermarkets*, 71 F.3d 637 (7th Cir. 1995) ........................................................... 8

*Lockheed Martin Idaho Tech. Co. v. Lockheed Martin Advanced Envtl. Sys,* No. CV-98-316-E-BLW, 2006 WL 2095876 (D. Idaho July 27, 2006) ................................................... 11

# TABLE OF AUTHORITIES

*MacLeod v. Proctor & Gamble Disability Ben. Plan*, 460 F. Supp. 2d 340 (D. Conn. 2006) ................................................................................................................... 4

*Makor Issues & Rights, LTD et al., v. Tellabs, Inc.*, et al., No. 02-CV-43566 (N.D. Ill.) ...... 15, 16

*Nichol v. Pullman Standard, Inc.* No. 85-C-2426, 1998 WL 105327 (N.D. Ill. Sept. 30, 1988) ................................................................................................................ 5

*Nichol v. Pullman Standard, Inc.*, 889 F.2d 115 (7th Cir. 1989).......................................... 4, 5, 6

*Pactiv Corp. v. S.C. Johnson & Son, Inc.*, No. 98 C 2679, 2001 U.S. Dist. LEXIS 3085 (N.D. Ill. Mar. 12, 2001)................................................................................... 17

*Quinn v. Blue Cross and Blue Shield Assoc.*, 161 F.3d 472 (7th Cir. 1998) ............................ 3, 5

*Ridings v. Riverside Med. Ctr.*, No. 06-CV-2134, 2007 WL 924020 (C.D. Ill. March 26, 2007) ............................................................................................................. 15

*Teumer v. General Motors Corp.*, No. 92-CV-1855, 1994 WL 48581 (N.D. Ill. Feb. 14, 1994) .............................................................................................................. 6

*Trustees of the Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.*, No. 03 C 6867, 2008 WL 728897 (N.D. Ill. March 18, 2008) ........................................ 5

*White v. Sunstrand Corp.*, 256 F.3d 580 (7th Cir. 2001)................................................. 2, 3, 5, 6

*Wiginton v. CB Richard Ellis, Inc.*, 220 F.R.D. 568 (N.D. Ill. 2004) ........................................ 10

*Williams Wyeth v. Impax Labs.*, Inc. No. 06-222, 2006 WL 3091331 (D. Del. Oct. 26, 2006) ............................................................................................................. 13

*Windy City v. America Online*, No. 04 C 4240, 2006 WL 2224057 (N.D. Ill. July 31, 2006) ............................................................................................................. 15

## Statutes

28 U.S.C. § 1920........................................................................................................... 1, 13

28 U.S.C. § 1920(4) ........................................................................................................ 8, 9

29 U.S.C. § 1132(g)(1) ............................................................................................... *passim*

29 U.S.C. § 1132(g)(2) ...................................................................................................... 4

## Rules

Fed. R. Civ. P. 23 ............................................................................................................. 5

Fed. R. Civ. P. 26(f)......................................................................................................... 8

## TABLE OF AUTHORITIES

Fed. R. Civ. P. 54................................................................................................. *passim*

Fed. R. Civ. P. 54(d) ........................................................................................... *passim*

Fed. R. Civ. P. 54(d)(1)................................................................................... 1, 2, 3

Local Rule 54.1 ................................................................................................... 1, 14

Defendants Tellabs, Inc., Tellabs Operations, Inc., Richard C. Notebaert, Michael J. Birck, Brian J. Jackman, Debra Ragusa, Michael Smiley and Joan E. Ryan ("defendants"), by their attorneys and pursuant to Fed. R. Civ. P. 54(d) and Local Rule 54.1, respectfully submit this reply memorandum of law in support of their bill of costs (Docket Nos. 262, 263).

## INTRODUCTION

In this case, defendants resisted complex ERISA stock drop litigation brought by experienced class action counsel from multiple law firms for over three years.  The litigation involved extremely burdensome electronic discovery, dozens of depositions and trial.  Taxable costs alone (to say nothing of attorney's fees, which defendants are not seeking) are approximately $1,500,000.  In the end, the Court ruled against plaintiffs on the merits of all claims they asserted, and further determined that their claims were time-barred by 22 months.

Plaintiffs argue that they, as losing class action litigants, are immune from an assessment of taxable costs under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920.  They contend that ERISA Section 502(g), which provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C. § 1132(g)(1), trumps Rule 54, which provides that "costs – other than attorney's fees – should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d).  (Pls. Mem. at 3-4).

Plaintiffs' position is contrary to Seventh Circuit decisions applying Rule 54(d) to cost awards under ERISA.  Class counsel know this when they initiate an ERISA class action; the business model of plaintiffs' class counsel anticipates that they might bear the costs of litigation, "taking the risk of failure in exchange for a premium award if the class prevails."  *White v. Sunstrand Corp.,* 256 F.3d 580, 586 (7th Cir. 2001).

Because plaintiffs' claims failed on the merits, Rule 54(d) and fundamental fairness require they "should" pay for the costs they created.  ERISA Section 502(g) does not provide

them an escape hatch.  *See infra* Part I.  Further, even without regard to Rule 54(d), plaintiffs'

claims for relief under ERISA Section 502(g) should be denied because plaintiffs' claims were

not substantially justified.  *See infra* Part II.  Assuming costs can be awarded, plaintiffs assert

that defendants are only entitled to recover $250,000, arguing that costs attributable to document

harvesting that enabled defendants to produce over three million pages in response to plaintiffs'

electronic discovery requests were for the "convenience of counsel" and therefore unrecoverable.

Plaintiffs' arguments to reduce the costs sought are without merit.  *See infra* Part III.  For the

reasons set forth below, the Court should award defendants **$1,474,191.11** in costs.[1]

## ARGUMENT

### I.       ERISA Section 502(g) Is Inapplicable To Defendants' Bill Of Costs, Which Is Governed By Rule 54(d).

Rule 54(d) provides:  "Unless a federal statute, these rules, or a court order provides

otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  Fed. R.

Civ. P. 54(d)(1).  Plaintiffs argue that ERISA Section 502(g) "provides otherwise," and that

Section 502(g), rather than Rule 54(d), controls defendants' bill of costs.  Plaintiffs are wrong.

To begin with, defendants rely on the Seventh Circuit's decisions applying Rule 54(d),

rather than Section 502(g), to award costs to prevailing ERISA parties.  *See, e.g., Hecker v.*

*Deere, et al.*, 556 F.3d 575, 591 (7th Cir. 2009) (affirming award of costs exceeding $200,000 to

prevailing defendants under Rule 54(d) in purported ERISA class action for breach of fiduciary

duty regarding 401(k) plan investments), *rehearing denied*, 569 F.3d 708 (7th Cir. 2009); *White,*

256 F.3d at 587  (awarding costs under Rule 54 of $17,839.55 to prevailing ERISA defendants in

class action); *Quinn v. Blue Cross and Blue Shield Assoc.*, 161 F.3d 472, 478-79 (7th Cir. 1998)

---

[1] *See* Exs. A, B-2, C-1, C-2, C-3, D-1, D-2, D-3, D-4, and E to defendants' opening memorandum (Docket Nos. 262, 263); *see also* Exs. C and D attached hereto, which reflect several adjustments in defendants' specific cost requests.

(affirming award of costs pursuant to Rule 54(d)).  *See also DiFelice v. US Airways, Inc.*, No. 1:04cv889, Dkt. No. 236 (E.D. Va. Oct. 6, 2006) (awarding taxable costs under Rule 54(d) to prevailing defendants in first post-*Enron* ERISA stock-drop class action trial); *Herman v. Cent. States. Se. and Sw. Areas Pension Fund*, No. 03-C-1010, 2003 WL 22955996, at **1-4 (N.D. Ill. Dec. 15, 2003) (awarding costs to prevailing defendants in ERISA class action under Rule 54).

The language of Section 502(g) does not "provide otherwise" as plaintiffs contend. Unlike Rule 54(d), Section 502(g) is not expressly limited to "prevailing party" awards:  it permits the recovery of attorney's fees in addition to costs, it provides that fee and cost awards are entirely within the court's discretion, and it does not limit recoverable costs to taxable costs. *Compare* 29 U.S.C. § 1132(g)(1) *with* Fed. R. Civ. P. 54(d)(1).  In *Armstrong v. Amsted Industries, Inc.*, No 01 C 2963, 2004 WL 2480998, at *1 (N.D. Ill. Nov. 3, 2004) (awarding costs to prevailing defendants in ERISA class action for breach of fiduciary duty), the court (Judge Moran) ruled that Rule 54(d), not ERISA Section 502(g), is the applicable standard for taxable costs in an ERISA action.   "Rule 54 costs are the norm" and "are generally a very small tail on a far larger fees dog," and nothing "suggests that Congress intended to single out costs for special treatment under ERISA."  *Id.*[2]

Plaintiffs contend that *Nichol v. Pullman Standard, Inc.*, 889 F.2d 115 (7th Cir. 1989), supports their argument that ERISA Section 502(g) trumps Rule 54(d) and that, impliedly, the Seventh Circuit's subsequent ERISA decisions under Rule 54(d) – which do not cite *Nichol* – were wrongly decided.  (Pls. Mem. at 3).  In *Nichol,* the losing party was a single plaintiff disability claimant – not a broad participant class represented by an alliance of class action

---

[2] *See also Chapman v. Choicecare Long Island Long Term Disability Income Plan*, No 05-0687, 2005 WL 3556194, at *1 (2d Cir. Dec. 29, 2005) ("separate analyses govern costs [under Rule 54(d) and attorneys fees [under ERISA Section 502(g)]"); *accord MacLeod v. Proctor & Gamble Disability Ben. Plan*, 460 F. Supp. 2d 340, 350 (D. Conn. 2006).

counsel who vigorously pursued extensive electronic discovery.  Indeed, of all the cases considering fees or costs under Section 502(g) that plaintiffs cite, only *two* are Rule 23 certified class actions, neither is within the Seventh Circuit, and neither is a court of appeals decision.

In *Nichol,* moreover, the Seventh Circuit affirmed a district court order denying *attorney's fees* to prevailing defendants under Section 502(g).  *See Nichol,* No. 85-C-2426, 1988 WL 105327, at *1 (N.D. Ill. Sept. 30, 1988) ("Defendants, who prevailed on the merits of this ERISA case, seek *attorney's fees* pursuant to 29 U.S.C. § 1132(g)(1) . . . defendants' motion for *attorneys' fees* is denied") (emphasis added), *aff'd*, 889 F. 2d at 121.   The Seventh Circuit found (unremarkably) that ERISA Section 502(g), rather than Rule 54(d), applied to defendants' fee petition, but the court did not, as plaintiffs suggest, "over[ride] the 54(d) approach" where defendants seek only costs and not fees.  (Pls. Mem. at 3).

The Seventh Circuit's subsequent rulings in *Hecker*, *White* and *Quinn* confirm that *Nichol* has no bearing on defendants' bill of costs.[3]   In fact, *all* of the Seventh Circuit's other Section 502(g) decisions cited by plaintiffs (*e.g., Bowerman, Little, Anderson, Bittner* and *Marquardt*) involved claims for attorney's fees.  (Pls. Mem. at 3, 5, 8).  *Armstrong,* however, answered the question that *Nichol* did not address:  "Are, then, costs excepted from the normal operation of Federal Rule of Civil Procedure 54, *when fees are not sought*, because they are

---

[3] Courts have distinguished between attorney's fees and non-taxable costs, which courts have discretion to award under ERISA Section 502(g), and taxable costs awarded to a prevailing party as a matter of right under Rule 54(d).  *See, e.g., Trustees of the Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.,* No. 03 C 6867, 2008 WL 728897, at *1 (N.D. Ill. March 18, 2008) (confirming previous award of plaintiff's taxable costs under Rule 54(d), and denial of an award of audit costs under ERISA Section 502(g)(2)); *Land v. Bartlow Bros., Inc.,* No. 06-3278, 2008 WL 2078045, at **1-2 (C.D. Ill. May 15, 2008) (denying prevailing defendant's motion for fees and audit costs pursuant to Section 502(g)(1), but awarding costs pursuant to Rule 54(d)).

within the 'express provision' of a federal statute, namely 29 U.S.C. §1132(g)(1)?  We think

not." 2004 WL 2480998, at *1 (emphasis added).[4]

In *White,* 256 F.3d at 585-86, which affirmed an award of Rule 54 costs to prevailing

ERISA defendants after a bench trial in a class action, Chief Judge Easterbrook not only

recognized the unfairness of requiring prevailing defendants to bear costs, but also noted that in

many circumstances the costs of the losing party are borne by the lawyers who prosecuted the

Rule 23 class action:

> Rule 54 says that the prevailing party recovers costs, and nothing in Rule 23  suggests
> that cost-shifting is inapplicable to class actions. What justification could there be for
> leaving prevailing defendants out of pocket?  Our eight representative plaintiffs observe
> that they do not want to bear the high expenses of litigation, and that protestation is easy
> to believe -- but Sundstrand does not want to bear it either, and there is no justification
> for shifting the costs to the pension plan and forcing fellow retirees to bear the costs of
> the eight plaintiffs' mistaken litigation choices. . .
>
> Entrepreneurial attorneys already supply risk-bearing services in class actions.  They
> invest legal time on contingent fee, taking the risk of failure in exchange for a premium
> award if the class prevails. A suit such as this, designed to generate a substantial financial
> return, induces lawyers to compete for the opportunity to represent the class.  What we
> held in *Rand* is that, without violating ethical standards, attorneys may agree to bear the
> risk of a costs award, as well as the risk that their time will go uncompensated.  By
> moving the risk of loss from the representative plaintiffs to the lawyers (who spread that
> risk across many cases and thus furnish a form of insurance) counsel can eliminate the
> financial disincentive that costs awards otherwise would create.

In this case, plaintiffs' counsel represented their experience and financial wherewithal as

support for class certification. (Docket No. 84, p.15).  It is clear that plaintiffs' counsel's firms,

as a consortium of joint class counsel, have been fronting the costs of this litigation and have

been spreading the prospect of success, or risk of loss, across many cases.  According to publicly

---

[4] Plaintiffs' reliance on *Keach v. U.S. Trust Co., N.A.*, 338 F. Supp. 2d 931 (C.D. Ill. 2004), is also
misplaced.  The court noted that whether 502(g) operated to the exclusion of Rule 54 was not a settled
matter:  "Needless to say, the Court has been unable to find any clear precedent in this circuit resolving
this question." *Id.* at 934.  Moreover, in *Armstrong* (one month later), Judge Moran reached the opposite
conclusion as *Keach*.  Judge Moran also acknowledged and rejected *Teumer v. General Motors Corp.*,
No. 92-CV-1855, 1994 WL 48581 (N.D. Ill. Feb. 14, 1994), another single-plaintiff case plaintiffs cite.

available information, class counsels' firms file dozens of purported class actions a year.  Their

firm websites list multi-million dollar settlements obtained on behalf of their clients (the

provisions of which often contemplate unopposed attorney's fee petitions).  (*See* Ex. A,

Declaration of Charles C. Jackson ("Jackson Reply Decl.") at ¶¶ 2-3 and Exs. A-1-A-2).

Whatever the virtues or demerits of plaintiffs' counsels' business model, these are the

economic realities.  Section 502(g) is not a sword to force defendants alone to bear great costs

they would otherwise be entitled to recover from plaintiffs under Rule 54(d).[5]  Nor is Section

502(g) a shield to protect class counsel from bearing their fair share as required by Rule 54(d).

Holding plaintiffs (or their counsel) accountable under Rule 54(d) for their share of costs is,

therefore, entirely appropriate.[6]

## II.     Defendants Are Entitled To An Award Of Costs Under ERISA Section 502(g).

Even if the Court were to consider defendants' bill of costs under ERISA Section 502(g),

defendants should still be awarded their requested costs.  Pursuant to Section 502(g), there is a

modest presumption in favor of awarding fees and costs to a prevailing party.  *See Little v. Cox's

Supermarkets*, 71 F.3d 637, 644 (7th Cir. 1995).  In determining whether fees should be awarded

under Section 502(g) (costs are tag-on claims), the essential issue is whether the losing party's

position was "substantially justified" and "taken in good faith," or taken to harass an opponent –

but most decisions under Section 502(g) consider the availability of attorney's fees.  *Id.*

---

[5]  It was plaintiffs who pressed for electronic discovery, who insisted on taking dozens of depositions, and who filed multiple, largely unsuccessful motions to compel.  (Docket Nos. 127, 146-149, 162-164, 176-184, 188-189, 193, 195, 202-205; *see also* Jackson Reply Decl. at ¶¶ 4, 5, 11 and Ex. A-9).

[6]  *See also In re Williams Sec. Lit. - WCG Subclass*, 558 F.3d 1144, 1150 (10th Cir. 2009) (upholding award of $612,000 in costs to prevailing defendants; plaintiffs' litigation choices, including the amount of damages sought, the complexity of the claims at issue and plaintiffs' aggressive discovery, necessarily resulted in heightened defense costs); *Conrad Boat Corp. v. Brunswick Corp.*, No. 01-1355, 17 Fed. Appx. 491, 494 (8th Cir. Aug. 27, 2001) (remanding for more specific findings to determine if district court abused its discretion by awarding only $371,856.65 of the $619,764.43 requested in costs when the prevailing defendant "may have had higher copying costs because of the expansive discovery requests").

The Court would be within its discretion to find that this action, which was time-barred from its inception, was not "substantially justified."  The Court permitted plaintiffs to go to trial based on their contention (to avoid ERISA's three-year statute of limitations) that the defendants had engaged in fraud or concealment.  (Docket No. 224).  When all was said and done, the Court ruled against plaintiffs not only on statute of limitations, but also on *every single* merits-related ERISA basis on which there was to make a ruling (except the presumption of prudence, because the Court found defendants won without it).  Further, the Court found plaintiffs failed in all their proofs, credited all the key defense witnesses, and rejected plaintiffs' experts.  (Docket No. 261).

Moreover, there is simply no reasoned basis, under the rubric of Section 502(g), for judicially subsidizing plaintiffs' business model and making the infliction of great hardship and expense a consequences-free privilege for plaintiffs' class action counsel.  Under Section 502(g), the Court should award defendants the costs they seek.

## III.    Defendants Are Entitled To Taxable Costs In The Amount Of $1,474,191.11.[7]

### A.    Electronic Discovery.

Plaintiffs' objections to 90% of defendants' requested electronic discovery costs are without merit.  Plaintiffs' arguments are also inconsistent with the realities of electronic discovery and misrepresent the necessity of certain expenses associated with the process.  As more fully explained below, defendants are entitled to an award of **$1,331,799.07** in costs associated with electronic exemplification of documents.

#### 1.    Electronic Discovery Has Become The Norm And Results In Higher Taxable Costs.

---

[7] Assuming that costs are awardable, plaintiffs do not object to the costs sought by defendants for transcripts of court hearings, transcripts of depositions, fees for witnesses, copies of documents filed with the Court, copies of documents produced in response to discovery, photocopies of trial exhibits, three trial exhibits, two copies of court transcripts, or certain electronic discovery costs for a total of $250,522.39. Thus, the Court should award defendants these costs.

Large electronic document productions are becoming the rule, not the exception, and cost awards are reflecting that reality.  "We are well past the day when all copies are basic photocopies.  The electronic storage of documents especially when they are numerous, allows a more efficient way to litigate the case and to present the evidence at trial."  *Adidas America, Inc. v. Payless Shoesource, Inc.*, Nos. 01-1655-KI and CV 03-1116-KI, 2009 WL 302246, at *6 (D. Oregon Feb. 9, 2009) (awarding costs for image capture, exhibit CDs, scanning, OCR, PDF and master CD expenses, translation services, technical time, TIFF conversion and blowbacks).  *See also Brown v. McGraw-Hill Cos.*, 526 F. Supp. 2d 950, 959 (N.D. Iowa 2007) ("the electronic scanning of documents is the modern-day equivalent of 'exemplification and copies of paper,' and, therefore, can be taxed pursuant to § 1920(4)").  Parties to litigation are now required to discuss electronic discovery in their Rule 26(f) Conference.  *See* Fed. R. Civ. P. 26(f).

At the same time, courts have recognized that electronic discovery can be exorbitantly expensive.  Thus, in certain circumstances courts have required the requesting party to share the burden of costs up front.  *See, e.g., Wiginton v. CB Richard Ellis, Inc.,* 220 F.R.D. 568, 573 (N.D. Ill. 2004) (shifting 75% of the costs of electronic discovery to plaintiffs; "e-discovery has the potential to be vastly more expensive due to the sheer volume of electronic information"); *Byers v. Illinois State Police,* No. 99 C 8105, 2002 WL 1264004, at **10-12 (N.D. Ill. June 3, 2002) (the "sheer volume of electronic information" distinguishes it from traditional paper discovery, as well as the additional costs in translating archived data into useable form; plaintiffs entitled to e-mails only if they paid the costs of production).  Other courts have required the requesting party to pay its fair share of electronic discovery at the end of the case in connection with the prevailing party's bill of costs.  *See Hecker*, 556 F.3d at 591  (affirming award of costs to prevailing defendant under Rule 54 for converting computer data into a readable format during discovery);  *Hyperphrase Techs., LLC v. Google, Inc*., No. 06-C-199-2, 2007 WL 5323773

(W.D. Wis. Apr. 7, 2007) (awarding electronic product expenses averaging $0.36 per page);

*Lockheed Martin Idaho Tech. Co. v. Lockheed Martin Advanced Envtl. Sys,* No. CV-98-316-E-

BLW, 2006 WL 2095876, at *2 (D. Idaho July 27, 2006) (awarding $4.6 million in costs for

creation of electronic database, which was "necessary due to the extreme complexity of this case

and the millions of documents that had to be organized."). These cases confirm that it is entirely

appropriate to require plaintiffs to share in these costs.

### 2. The Costs Borne By Defendants Are The Direct Result Of Plaintiffs' Voluminous Electronic Discovery Requests.

In their 108 document requests and multiple rounds of correspondence, plaintiffs asked

defendants to search a host of electronic data sources. (Jackson Reply Decl. at ¶¶ 4, 5 and Exs.

A-3-A-5, A-7-A-13). Tellabs hired a vendor to work with Tellabs' IT department and attorneys

to locate any media where relevant data existed, including servers, group shares, hard drives,

thumb drives, personal digital assistants (PDA), and backup tapes. (*Id.* at ¶ 6). Tellabs identified

approximately 75 custodians and 15 group shares likely to contain responsive documents.

(Declaration of Jonathan Ruggless ("Ruggless Decl.") at ¶ 5, attached as Ex. B). Once sources

of data were identified, imaging was used to create an exact copy of the data. (*Id*. at ¶ 6). The

vendor then culled down the data using search terms to which plaintiffs agreed. (Jackson Reply

Decl. at ¶ 7, Ex. A-14). Documents containing any of the search terms were loaded into a

database, and the vendor extracted the documents' metadata. (Ruggless Decl. at ¶ 9).

Plaintiffs also requested that defendants restore and search Tellabs' backup tapes for

responsive documents. (Jackson Reply Decl. at ¶¶ 4-5, Exs. A-3-A-5, A-7-A-9, A-13). While

defendants initially objected to doing so given the cost involved and questionable utility, during

the electronic discovery process defendants determined that it was appropriate to restore Tellabs

backup tapes from HP Open Mail (a system which Tellabs abandoned in or around 2002 and

which HP no longer supports at all) for hundreds of users.  Tellabs had to hire another vendor to restore the backup tapes.  (Jackson Reply Decl. at ¶ 8).  This process was lengthy, expensive, and significantly more complicated than the collection of other data.  (Ruggless Decl. at ¶¶ 7-8).

Through the processes described above, defendants identified approximately 120 million pages for review in response to plaintiffs' discovery requests.  After extensive review by over 50 contract attorneys and 12 Morgan Lewis attorneys, defendants produced 3,182,109 pages of responsive documents.  (Jackson Reply Decl. at ¶ 9).  Given the expense and burden associated with the electronic discovery process, defendants would have been well within their rights to seek cost-sharing from plaintiffs, at least with respect to the backup tapes.  For the sake of moving forward on a very tight discovery schedule with plaintiffs asking that defendants complete deponent-specific productions before depositions, defendants elected to bear the costs associated with electronic discovery at the time.  (*Id.*).  However, that efficiency-based decision should not bar defendants from recovering the costs now.  *See supra* cases cited at pp. 8-9.

> **3.     The Costs Defendants Seek Were Necessary And Not For Counsel's "Convenience."**

Plaintiffs argue that 90% of the costs defendants seek associated with the process described above were for the convenience of counsel.  Plaintiffs claim that the costs sought for data storage, extraction of embedded text and metadata, and creation of TIFF files all involved the "creation of new searchable documents," rather than the conversion of existing documents into a discoverable format, and are not taxable costs.  (Pls. Mem. at 11).  Plaintiffs are incorrect.

> **a.     Creation Of TIFF Files.**

The only "new" documents created by Tellabs were e-mails extracted from the backup tapes and TIFF documents created for production.  The backup tapes were stored as raw data without formatting and could not be reviewed or produced until converted into a readable format.

TIFF files are a standard production format for electronic documents and allow bates numbering without altering the original native file. (Ruggless Decl. at ¶¶ 7, 11). *See Williams Wyeth v. Impax Labs.*, Inc. No. 06-222, 2006 WL 3091331, at *2 (D. Del. Oct. 26, 2006) (PDF or TIFF files are default production formats). Plaintiffs did not object when defendants informed them they would produce documents in TIFF format. (Jackson Reply Decl. at ¶¶ 5, 9 and Ex. A-11).

### b.      Data Storage.

Defendants' database hosting fees for storage of electronic documents were not solely for counsel's convenience, as plaintiffs suggest. Not only were documents reviewed on the electronic database, they were produced from the database. (Ruggless Decl. at ¶ 13). As neither Tellabs nor its attorneys had the capacity to store this quantity of electronic data, Tellabs had to hire an outside vendor to store the data or print the documents and store them in hard copy format. (*Id.* at ¶¶ 4-5). Had defendants reviewed and produced these documents in hard copy format, the costs would have totaled more than $2.63 million,[8] nearly *double* what defendants seek for electronic document production. For purposes of this bill of costs, defendants' use of a database has actually worked in plaintiffs' favor.

### c.      Extraction Of Embedded Text And Metadata.

Extraction of metadata does not, as plaintiffs suggest, create a "new document" for which taxable costs are unrecoverable. Rather, metadata is stored in fields within the electronic database in conjunction with the original document. Metadata contains the last modified date,

---

[8] As discussed above, defendants reviewed 120 million pages of potentially responsive documents containing the agreed-upon search terms and produced 3,182,109 pages of responsive documents. Assuming a cost of 12 cents per page, the cost to print the 120 million pages actually reviewed by attorneys would have been $2,250,000. To make one copy of each of the 3,182,109 pages produced would have cost an additional $381,853.08, for a total cost of over $2.63 million had defendants conducted the review and production of the electronic data in paper format.

11

creation date and author for Word documents, PDFs and other files, which unlike e-mails do not contain a visible field that displays this information. (Ruggless Decl. at ¶ 10).

Contrary to plaintiffs' assertions, the extraction of metadata was not for the convenience of counsel.  The search capabilities of defendants' electronic database came from extracting the metadata from the documents collected, and allowed defendants to track and identify for plaintiffs the custodians whose documents were being produced.  (Ruggless Decl. at ¶ 10).  The extraction of the embedded text and metadata also allowed defendants to respond to plaintiffs' second merits-related document requests, which plaintiffs did not serve until October 31, 2008 – a month before the close of discovery.  (Jackson Reply Decl. at ¶ 10, Ex. A-5).  To respond to this request without search capabilities, defendants would have had to re-review all unproduced documents – millions and millions of pages – to determine if they were responsive to this new request, a feat that would have been otherwise impossible by the close of discovery.  Moreover, just days before the close of discovery, and for the first time, plaintiffs requested that defendants produce Goldman Sachs valuation reports and "Engineering Deficiency Reports," documents for which plaintiffs ultimately filed a motion to compel.  (Docket No. 184).  It was only due to these search capabilities that defendants' counsel was able to comply with the Court's order to prepare a verified statement that a diligent search for the requested documents had been completed. (Docket No. 189); (Jackson Reply Decl. at ¶ 11).

In short, it is absurd for plaintiffs to argue that the process that enabled defendants to respond to plaintiffs' document requests was anything other than necessary.  It would have been virtually impossible to extract the responsive documents from the massive volumes of data plaintiffs insisted defendants review without using a database and the search terms *to which plaintiffs agreed*.  Thus, the Court should award defendants the electronic discovery costs they seek.  *See Hecker,* 556 F.3d at 591 (upholding award of costs for electronic processing of

discovery materials, finding costs "for converting computer data into a readable format in response to plaintiffs' discovery requests[,] . . . are recoverable under 28 U.S.C. 1920"); *Ridings v. Riverside Med. Ctr.*, No. 06-CV-2134, 2007 WL 924020, at *2 (C.D. Ill. March 26, 2007) (awarding costs for converting email into searchable format because it enabled defendants to search the accounts requested by plaintiffs "for the search terms agreed upon by parties").[9]

      **4.**      **Defendants Do Not Seek Costs Attributable To Sidley Austin For The Securities Litigation.**

Plaintiffs argue that defendants improperly seek to recover costs that were jointly incurred in connection with *Makor Issues & Rights, LTD et al., v. Tellabs, Inc.*, et al., No. 02-CV-43566 (N.D. Ill.). However, defendants would have incurred the costs of the electronic database regardless of the *Makor* action. Though *Makor* was filed in 2002, fact discovery in that case actually began later than fact discovery in this case. Although there is overlap in the factual allegations in the two actions, the class period in *Makor* ended on June 19, 2001, while the class period in this action ended on July 1, 2003. Given the shorter class period, and consequent smaller number of responsive documents in *Makor*, Tellabs would have incurred far fewer costs had only that case proceeded. That Tellabs was able to save money in *Makor* by reusing the same database created for this action does not support a denial of those costs here.[10]

      **B.**      **Documents Used in Deposition Preparation.**

Plaintiffs contend defendants are not entitled to any costs reasonably necessary to prepare

---

[9] Plaintiffs' reliance on *Fells v. VA DOT*, 605 F. Supp. 2d 740 (E.D. Va. 2009), and *Windy City v. America Online*, No. 04 C 4240, 2006 WL 2224057 (N.D. Ill. July 31, 2006), is misplaced. In *Fells*, the defendant began and then abandoned the creation of an electronic database, yet sought costs for uncompleted and unused database. *Fells*, 605 F. Supp. 2d at 741. In *Windy City*, AOL explicitly admitted that it was converting files into a format that allowed for easier searching capabilities, although plaintiffs had not explicitly asked for documents in this format. *Windy City*, 2006 WL 2224057, at *4.

[10] Defendants seek no costs for expenses attributable only to the *Makor* case. Defendants acknowledge that, should Tellabs be successful in the *Makor* action, any costs awarded in this case for exemplification of electronic discovery would not be recoverable in *Makor*.

for depositions, claiming that defendants "failed to demonstrate that production of multiple copies was for purposes other than the convenience of counsel."  (Pls. Mem. at 13).  Plaintiffs' decision to take 27 depositions, and to notice 13 of those depositions over the course of only four weeks at the tail end of discovery, was decidedly *in*convenient for defendants' counsel.  As explained in defendants' opening memorandum, because of the schedule set by plaintiffs, defendants were required to prepare multiple witnesses at the same time, and could not have done so without multiple copies of the potentially relevant discovery.  (Defs. Mem. at 10).  *See Great Lakes Docks & Dredge Co. v. City of Chicago*, No. 94 C 2579, 2000 WL 1898533, at *2 (N.D. Ill. Sept. 18, 2000) (awarding $62,927.46 in copying costs, noting there was "no indication that [the] attorneys made a habit of making unnecessary sets of copies" and "[t]he court does not believe that a prevailing party must prove the absence of wasteful copying in order to recover its costs").[11]  Defendants maintain their request for **$31,293.56** in costs for these documents.

### C.    Trial Transcripts.

Plaintiffs argue that, pursuant to Local Rule 54.1, defendants must limit their requests relating to trial transcripts to the costs for the original transcript and one copy.  (Pls. Mem. at 12-13).  Defendants agree and accordingly reduce their request by $4,550.40.  Thus for costs associated with court trial transcripts, defendants seek a total of **$9,756.15**.  (Ex. D hereto).

### D.    Demonstrative Trial Exhibits.

Plaintiffs argue defendants are not entitled to their costs associated with two demonstrative exhibits designed to rebut the testimony of plaintiffs' expert Ronald Vollmar,

---

[11]   Plaintiffs also argue that the Court should deny defendants' costs for copies of documents necessary for deposition preparation as the invoices are insufficiently detailed.  But a prevailing party need not produce "a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs."  *Fairley v. Andrews*, No. 03 C 5207, 2008 WL 961592, at *6 (N.D. Ill. Apr. 8, 2008) (citation omitted).  Only the best obtainable breakdown from records is required, *id.*, which is exactly what defendants provided.  (Docket Nos. 262 and 263, Ex. D-4).

because the exhibits were not actually used at trial. Plaintiffs cite *Pactiv Corp. v. S.C. Johnson & Son, Inc.*, No. 98 C 2679, 2001 U.S. Dist. LEXIS 3085, at **13-14 (N.D. Ill. Mar. 12, 2001) (Kennelly, J.), in which this Court denied a request for costs to create trial exhibits where the defendants had prevailed on summary judgment some two-and-a-half months before the case was set for trial. In contrast, defendants in this case planned to use the exhibits during trial to rebut Mr. Vollmar's testimony, but did not use the exhibits because the scope of the witness's permissible testimony *at trial* was considerably narrower than his report and deposition. (Jackson Reply Decl. ¶ 12, Exs. A-17-20); (April 30, 2009 Trial transcript at 1585:7-13; 1609:20-25; 1613:11-1614:3; and 1617:7-1918:4, attached as Ex. E). *Cf. Frazier v. Layne Christensen Co.*, No. 04 C 0315, 2007 WL 1453133, at *3 (W.D. Wis. Feb. 22, 2007) ("Plaintiffs are wrong when they assert that the clerk erred in awarding defendants the costs of copying of any trial exhibits not admitted into evidence. Counsel cannot be expected to predict with precision exactly which documents will become necessary for use at trial."). Therefore, defendants are entitled to their full costs for their demonstrative trial exhibits, for a total of **$50,717.91**.

## CONCLUSION

Defendants respectfully that the Court award them costs totaling **$1,474,191.11**.

Dated: August 13, 2009

Respectfully submitted,

_____

Charles C. Jackson
Sari M. Alamuddin
Deborah S. Davidson
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
(312) 324-1000 Telephone
(312) 324-1001 Facsimile
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Deborah S. Davidson, one of the attorneys for Defendants Tellabs, Inc., Tellabs Operations, Inc., Richard C. Notebaert, Michael J. Birck, Brian J. Jackman, Debra Ragusa, Michael Smiley, and Joan E. Ryan, hereby certify that, on August 13, 2009, I caused to be electronically filed **Defendants' Reply Memorandum in Support of Their Bill of Costs** with the Court using the Court's Electronic Case Filing System, which will send notification of such filing to the following:

Norman Rifkind
Leigh R. Lasky
Lasky & Rifkind, Ltd.
rifkind@laskyrifkind.com

Matthew M. Houston
Wechsler Harwood LLP
488 Madison Avenue, 8th Floor
New York, NY 10022
mhouston@whesq.com

I further certify that copies were served via e-mail on August 13, 2009, to the following non-ECF participants:

Robert B. Weiser
The Weiser Law Firm, P.C.
121 N. Wayne Avenue, Suite 100
Wayne, PA  19087
rw@weiserlawfirm.com

Edward W. Ciolko
Mark K. Gyandoh
Peter A. Muhic
Barroway Topaz Kessler Meltzer Check LLP
280 King of Prussia Road
Radnor, PA  19807
eciolko@btkmc.com
mgyandoh@btkmc.com
pmuhic@btkmc.com

/s/ Deborah S. Davidson
Deborah S. Davidson